[No. 377.   March 2, 1889.]

CHARLES W. LEWIS, APPELLEE, V. LUCIANO
    BACA AND RAMON PADILLA, ADMINISTRATORS
    OF THE ESTATE OF JOSEPH LACKEY, DECEASED,
    APPELLANTS.

CONTRACT—APPEAL—INSTRUCTIONS GIVEN ACCORDING TO STATEMENT OF
    TRIAL COURT IN BILL OF EXCEPTIONS, NOT APPEARING OF RECORD—
    PRESUMPTION.—Where, on appeal, it is stated by the court below in
    the bill of exceptions filed that a certain instruction was given which
    does not appear of record, it will be presumed that the court properly
    declared the law on the subject.   For a like reason, a charge set out
    as having been given by the court of its own motion, will not be
    inquired into, where the judge certifying the bill and record states
    that the general charge of the court embraced matters not appearing
    in the record.

ID.—MATTERS DEHORS THE RECORD—CONFLICT OF MEMORY BETWEEN
    TRIAL COURT AND COUNSEL AS TO "SUBSTANCE OF WHAT OCCURRED"
    AT TRIAL—APPEAL.—But the appellate court will not, on appeal;
    receive extrinsic evidence of matters that occurred at the trial dehors
    the record, to aid in the construction of the bill.   For that purpose
    the bill itself must be followed in connection with the record.   Nor
    will the court undertake to settle a conflict of memory between the
    court below and counsel, leaving the whole record in doubt as to
    which was correct in presenting the "substance of what occurred" at
    the trial, but will disregard every matter of fact contained in the bill
    not arising out of the record proper.

ID.—CLAIM AGAINST ESTATE OF DECEASED PERSON IN PROBATE COURT—
    INFORMALITY OF ITS PROCEEDINGS, AND POWER TO ENTERTAIN,
    WHETHER LEGAL OR EQUITABLE—PROPER PROCEEDING ON TRIAL DE
    NOVO IN DISTRICT COURT, ON APPEAL.—A claim against the estate of
    a deceased person based on a contract for the price or value of sheep
    and wool is not of an equitable nature, though the dealings between
    the parties were loose and irregular; and an action de novo on such
    a claim, on appeal to the district court from a judgment of the probate
    court disallowing the claim, would not have been properly brought
    on the chancery side of the court.   In the probate court the proceed-
    ing is informal as to matters of pleading, and the plaintiff was not
    bound to the same degree of accuracy of statement required in a
    superior court of record.   Claims, established by proper evidence,
    and within the jurisdiction of the court, may be asserted in that court
    against the estates of deceased persons, whether legal or equitable.

ID.—APPEAL FROM PROBATE COURT TO DISTRICT COURT—TRIAL DE NOVO
—ISSUE OF FACT, RIGHT TO TRIAL OF BY JURY IN DISTRICT COURT.—
On appeal, in such case, from the probate court to the district court,
where the issue is one of fact, and the amount involved over $20, the
plaintiff is entitled to a trial by a jury, as he would have been in an
original suit in that court on the facts disclosed in the record, which
would have justified an action in assumpsit; and the fact that he
elects to sue in the probate court in the first instance can not deprive
him of that right, which is secured by both the constitution of the
United States and the statutes of this territory.

APPEAL, from a judgment in favor of plaintiff,
from the First Judicial District Court, Santa Fe County.
Judgment affirmed.

The facts are stated in the opinion of the court.

GILDERSLEEVE & PRESTON for appellants.

The action being one relating to the settlement of
the estate of a deceased person, belonged to the chan-
cery side of the court, and should have been tried as a
cause in equity.  It is true that in chancery causes
issues of fact may be framed and such special issues
submitted to a jury.  But it was not done in this case.
2 Story, Eq. Jur., secs. 1479, 1479a;  2 Daniel's Chy.
Pl. & Pr., p. 1071, et seq., and p. 1110;  Franklin v.
Greene, 84 Mass. (2 Allen) 519;  Dunphy v. Klein-
smith, 11 Wall. 610.

The defendants requested the court to instruct the
jury that if the plaintiff proved a contract different.
from the one set forth in his claim that would not
entitle him to recover, which was refused.  It is well
settled that a party must recover, if at all, upon the
averments in his pleadings.  Murphy v. Wilson, 44
Mo. 313;  Harrison v. Nixon, 9 Pet. 483;  Boone v.
Chiles, 10 Pet. 177;  2 Greenleaf Ev., sec. 51.

The fourth instruction requested by defendants,
which was also refused, presents a correct rule of law,
applicable to the testimony of a witness, and should

have been given.   Mercer v. Wright, 3 Wis. 568; Crabtree v. Hadenbaugh, 79 Am. Dec. 327.

The fifth instruction offered by defendants, requesting that the jury be instructed as to the evidence necessary to entitle plaintiff to recover, was according to the rule of evidence prescribed in such cases.   Comp. Laws, sec. 2082.

Where there is any evidence to prove the issue the question is for the jury.   Otis v. Watkins, 9 Cranch. 338; Schuchart v. Allens, 1 Wall. 359; Crane v. Morris, 6 Pet. 598.

It is error for the court to instruct the jury as to the sufficiency of the evidence.   Chesapeake, etc.; Co. v. Knapp, 9 Pet. 541; Mutual, etc., Ins. Co. v. Snyder, 93 U. S. 393.

Courts can not assume in instructions to juries that material facts are established, unless they are admitted, or the evidence respecting them is uncontroverted.   Bank of Leavenworth v. Hunt, 11 Wall. 391.

If the plaintiff delivered to Lackey two thousand ewes upon the condition that Lackey should deliver to him each year one half of the wool derived from them, or a certain amount of wool in pounds, each year, and no time or place was fixed for the delivery of the wool, no action could be maintained by plaintiff on account of the nondelivery of the wool until after a demand made and refusal to deliver.   Martin v. Chuvin, 7 Mo. 277; Bradley v. Farrington, 4 Ark. 532; Frazee v. McCord, 1 Ind. 224; Decker v. Bishop, 1 Morr. (Iowa) 62; Bolles v. Stearnes, 11 Cush. (Mass.) 320.

If plaintiff delivered to Lackey two thousand ewes under an agreement that Lackey should deliver to him each year a certain amount of wool, and on the termination of the contract Lackey was to return to him the same, or a like number of ewes, and no time was specified for the termination of the contract, plaintiff could not maintain an action against Lackey or his

representatives for the value of ewes until after demand for their return and a failure to comply with the demand. 2 Greenleaf Ev., sec. 644; Bolles v. Stearnes, 11 Cush. (Mass.) 320.

Verdicts should be in conformity with the issues formed. Patterson v. United States, 2 Wheat. 221.

CATRON, KNAEBEL & CLANCY for appellee.

HENDERSON, J.—This suit was begun in the probate court of Santa Fe county by appellee, Lewis, to recover from the estate of Joseph Lackey the sum of $10,202.20. The claim is stated in the following form:

"The estate of Joseph Lackey, deceased, to Charles W. Lewis, Dr.

"For 2,500 improved ewes, delivered to said Lackey by said Lewis in April, 1882, on the condition that said Lackey was to pay therefor one half of the increase and one half of the wool from said ewes, there being now due on said contract the following amounts, viz.:

| | |
|---|---:|
| 3,868 merino ewes | $5,802 00 |
| 870 yearling ewes | 870 00 |
| 1,336 wethers | 1,336 00 |
| 18,285 pounds of wool | 2,194 20 |
| | $10,202 20" |

After taking proof in the probate court, the whole demand was rejected. Lewis thereupon appealed to the district court. He there recovered judgment for $5,250. The verdict of the jury contained the items on which the damages were assessed. The administrators of Lackey appealed.

The record before us is in such condition as to render it impossible to determine what was, or what was not, done in the court below, in the way of giving or refusing instructions. After the trial and before the record was filed in this court many of the papers in the case were accidentally destroyed by fire. No effort was made to

CONTRACT: instructions: statement of trial judge not of record: presumption.

substitute them in the court below as lost records. Counsel seem to have agreed that the substance of the contents of these lost papers is embraced in the record. Exceptions were taken, as stated in the supposed record, to the refusal of the court to give a series of instructions moved by the defendants, but the record also shows that the court, according to the memory of the presiding judge, actually gave the first instruction moved, and the substance of the other rejected instructions, or embodied them in the general charge by the court of its own motion. The trial judge makes the following statement in the bill of exceptions and record: "My best impression is that the defendant's first instruction was given or included in the general charge; that the second instruction was given or included in the general charge, and not repeated; that the defendant's third and fifth instructions were marked 'Refused,' because substantially included in the general charge, and not repeated; that the fourth instruction was refused. The court charged the jury to judge of the credibility of the witnesses and of the weight of the evidence. My impression is that the second instruction was more definite as to the time when limitation would begin to run, or when the cause of action accrued, or, if not, it was qualified by fixing the time. So long after the trial, I can only give the impressions I have at this time." Again, the trial judge says in the record:

"Though not deemed regular to sign bills of exception in this class of cases, I have done so at the request of counsel in this case.

(Signed)                          "R. A. REEVES,
                "Judge First Judicial District."

The only instruction conceded to have been asked and refused, unless the substance of it was embraced in the general charge by the court, was the fourth, which is as follows: "If the jury believe that Lewis and Alderete, or any other witness on this trial, has

testified to an untruth on any material point, you may then disregard the entire testimony of any such witness." The court below says in the bill of exceptions that the jury was instructed as to the credibility of the witnesses and the weight of the evidence. If any instruction whatever was given to the jury on this point, and not appearing in the record, we will presume it to have properly declared the law on the subject, and for that reason the refusal to charge as in the fourth instruction can not be regarded as erroneous. The charge set out as having been given by the court of its own motion, for a like reason, can not be inquired into, because the judge certifying the bill and record says the general charge of the court embraced matters not appearing in this record. This court on appeal will not receive any extrinsic evidence of matters that MATTERS dehors the record: conflict of memory between court and counsel. transpired at the trial dehors the record, to aid in the construction of the bill of exceptions. The only guide for this purpose is the bill itself, in connection with the record; which must be considered as presenting a distinct, substantive case, which, if defective in any material point, can not be supplied by intendment of the court. Dunlop v. Moore, 7 Cranch; Spaulding v. Alford, 1 Pick. 37; Pow. App. Proc. 240.

After the seal of the judge has been affixed to the bill, the truth of the statements therein contained can never thereafter be doubted. Saund. Pl. & Practice, vol. 1, p. 318. A bill of exceptions is founded on matter of law, or on a point of law arising out of a matter of fact not denied. 2 Bl. Comm. 372; 1 Saund Pl. & Prac., pp. 316, 317. Every matter of fact arising upon exceptions on the subject of instructions is, to say the least, made doubtful by the manner in which the record comes before us. Appellants' counsel, by consent of opposing counsel, presented to the court below what they termed a "bill of exceptions," and that

portion of the record deemed essential to a correct review of the case here, but the court made amendments the effect of which was to leave the whole record in doubt as to whether the memory of the court was correct or that of counsel in presenting the "substance of what occurred" at the trial. We will not undertake to settle the conflict, but will disregard every matter of fact contained in the bill, and not arising out of the record proper.

This leaves for our consideration two questions:

First, whether the cause could or should have been tried as a case in chancery, as upon a bill filed in the usual course of practice. The proceeding in the probate court is informal as to matters of pleading, and therefore the plaintiff was not bound to that degree of accuracy of statement required in a superior court of record. Claims, whether legal or equitable, so they can be established by proper evidence, and within the jurisdictional power of the probate court to entertain, may be asserted in that tribunal against the estates of deceased persons. This claim was based on a contract for the price or value or sheep and wool. Nothing is said, except that the amount claimed was due and unpaid. The facts would have justified an action in assumpsit in the district court, as the amount exceeded $100. We do not see any necessity for applying to a court of chancery for relief, on the facts disclosed in this record. It was a share, or, as called in this record, "a partido contract" to accept a number of ewes, and pay a pound and a half of wool per annum for each sheep, and at the end of the "partido" to return a like number of ewes to the owner. The evidence shows that two thousand ewes were delivered on this contract in 1882, and were worth at that time and at the date of the death of Lackey $1.50 per head. The lowest price of wool in any of the years between 1882 and 1886 was

CLAIMS against estate of deceased person: jurisdiction of probate court.

twelve and one half cents per pound. The business dealings between Lewis and Lackey were conducted in a very loose and irregular manner. This may be explained upon the theory that Lewis believed Lackey intended to make his son Jesse his heir by executing a will. It seems he thought the declaration by Lackey of his intention to constitute his son his heir operated as a will to that effect. Lackey was an old man and made his home at the house of Lewis for many years. This may explain many things that otherwise would operate strongly against the bona fides and legal validity of the claim as asserted, and, as we think, proven, not only by Lewis himself, but at least in part by two other witnesses.

The second and only remaining question before us is whether the case should not have been tried by the court, not because it was essentially an equity proceeding, founded upon equitable elements, demanding the application of a chancery remedy, but because it was an appeal from the probate court, and, although triable de novo in the district court, the presiding judge should have heard the case as the probate judge did, and found the facts and made his declaration of law thereon. A trial de novo, as we take it, means a trial anew in the appellate tribunal, according to the usual or prescribed mode of procedure in other cases involving similar questions, whether of law or fact. It was a simple question of fact whether Lackey in his lifetime received sheep upon a "partido," upon the terms claimed by the plaintiff. These facts were triable by a jury on an original suit in that court. Did his election to sue in the probate court in the first instance deprive him, when compelled to appeal to that court, of a right secured by law, had he sued in that tribunal? We think not. A right to a trial by jury in all cases at law, when the amount is above $20, is secured by the constitution of the United

APPEAL to district court: trial de novo: trial by jury.

States and by the local statutes of New Mexico.   This was a suit at law.   There is no error arising upon this record, and the judgment below is affirmed.

LONG, C. J., and BRINKER, J., concur.