853 P.2d 163

**Ida GALLEGOS, Claimant–Appellant,**

v.

**CITY OF ALBUQUERQUE, a self-insured employer, Respondent–Appellee.**

No. 13730.

Court of Appeals of New Mexico.

April 7, 1993.

Certiorari Denied May 20, 1993.

David A. Archuleta, Albuquerque, for claimant-appellant.

Richard J. Shane, Deborah S. Dungan, Padilla, Riley & Shane, P.A., Albuquerque, for respondent-appellee.

## OPINION

HARTZ, Judge.

Ida Gallegos (Worker) appeals from a disposition order of the workers' compensation administration (the Administration) which ruled that as of March 26, 1990, she had no residual disability from a January 30, 1989, accident she suffered while working for the City of Albuquerque (the City). We affirm because the workers' compensation judge (the WCJ) could rationally have determined that Worker had failed to meet her burden of establishing disability after March 25, 1990.

The record in this case is quite lengthy and involved. With the assistance of able briefs and oral argument by both parties we have thoroughly reviewed the evidence. We will not repeat the evidence in detail. We recite only those facts necessary to an understanding of this opinion.

Worker was injured by a fall in a City storeroom on January 30, 1989. At the time, she held the number two administrative position in the City's Weed and Litter Division. A doctor at the City's Employee Health Center released her to work without restrictions two weeks later. During the next year Worker worked episodically, sometimes with restrictions. She complained of various ailments, including headaches and pain in her neck, shoulder, lower back, and right leg. Twice she fell at her home, each time injuring a finger. Worker's treating physicians originally believed that the first fall was caused by her back injury of January 30, 1989. On February 21, 1990, Dr. Barry Diskant, medical director of the City's Employee Health Center, placed Worker on leave. She was complaining of pain and he thought that she could not continue working in a job which required "a lot of driving." At the hearing before the WCJ both parties presented evidence concerning the City's offer to Work-

er of another position and her response to the offer. She did not work for the City after February 21, 1990. Dr. Diskant testified that Worker reached maximum medical improvement on March 26, 1990.

While Worker was not working, the City paid her benefits for temporary total disability. The City also paid for treatment and consultation by a number of physicians. In August 1990 a neurologist to whom Worker had been referred made a preliminary diagnosis of multiple sclerosis, based on an MRI of her brain. On November 21, 1990, the City filed with the Administration a Petition to Reduce Benefits, seeking a termination or reduction of temporary total disability benefits. The City continued to pay Worker full benefits for temporary total disability until the Administration filed a Recommended Resolution on January 15, 1991, recommending that Worker's benefits be reduced to thirty percent permanent partial disability. The City made the recommended partial disability payments up to the time of the hearing before the WCJ.

We now discuss the allocation of the burden of persuasion, whether the WCJ's ruling is affirmable, and whether we can consider evidence in the supplemental record on appeal.

## I. BURDEN OF PERSUASION

The City filed its petition pursuant to NMSA 1978, Section 52–5–5(A) (Repl.Pamp.1991), which permits "any party" to file a claim with the director of the Administration when a dispute arises under the Workers' Compensation Act (the Act). The Administration then attempts to resolve the dispute informally and issues a recommendation for resolution within sixty days after receipt of the claim. Section 52–5–5(C). If either party timely rejects the recommendation, the matter is assigned to a WCJ for hearing. *Id.* The first issue before us is whether the City bore the burden of persuading the WCJ that Worker's benefits should be terminated or reduced. We hold that the City did not bear that burden. The burden was on Worker to establish entitlement to benefits.

The legislature introduced the procedure provided by Section 52–5–5 in 1986, when it created the Administration and removed workers' compensation cases from the district courts. Under former law the only way to initiate a judicial determination of a worker's entitlement to benefits was for the worker to file a claim after the employer failed or refused to pay compensation. *See* NMSA 1978, §§ 52–1–26, –31(A) (Orig.Pamp.). Once the district court had entered a judgment awarding benefits, either party could apply for a change in benefits. NMSA 1978, § 52–1–56(A) (Orig.Pamp.). In the initial judicial proceeding the worker had the burden of persuasion with respect to entitlement to benefits. *See Aguilar v. Penasco Indep. Sch. Dist. No. 6,* 100 N.M. 625, 628, 674 P.2d 515, 518 (1984). After the initial judgment the party seeking a change in benefits had the burden of persuasion with respect to the change. *See Amos v. Gilbert W. Corp.,* 103 N.M. 631, 635–36, 711 P.2d 908, 912–13 (Ct.App.1985). Thus, an employer seeking reduction in benefits had the burden to establish that there had been a decrease in disability, whereas a worker seeking an increase in benefits had the burden of establishing an increase in disability. *See id.* These rules accord with the law in other jurisdictions. *See* 3 Arthur Larson, *The Law of Workmen's Compensation* § 80.33(a) (1989) (worker has burden of proving the claim), § 81.33(c) (burden is on movant who seeks to open the award).

Prior to filing its petition the City had been paying Worker full benefits for temporary total disability. Although New Mexico has adopted what is apparently the minority rule that permits voluntary payment of benefits by the employer to be treated as competent evidence of liability, *see Romero v. S.S. Kresge Co.,* 95 N.M. 484, 486, 623 P.2d 998, 1000 (Ct.App.), *cert. denied,* 95 N.M. 593, 624 P.2d 535 (1981), *overrruled on other grounds by Dupper v. Liberty Mutual Ins. Co.,* 105 N.M. 503, 734 P.2d 743 (1987); 2B Larson, *supra,* § 79.43, New Mexico has rejected the contention that voluntary payment by the employer shifts the burden of persuasion from

the worker to the employer. *See Romero,* 95 N.M. at 486, 623 P.2d at 1000. In holding that the voluntary payment of compensation benefits does not create a presumption that the employer is liable, our Supreme Court wrote, "To impose the presumption would not only be contrary to the remedial nature of workmen's compensation but would also discourage prompt payment of benefits which might be essential for the worker's survival." *Wilson v. Richardson Ford Sales,* 97 N.M. 226, 228, 638 P.2d 1071, 1073 (1981); *accord* 2B Larson, *supra,* § 79.43, at 15–426.112. In other words, it is against public policy to penalize an employer by shifting the burden of persuasion when the employer voluntarily takes action that benefits the worker.

The identical public policy considerations argue against shifting the burden of persuasion to the City in the circumstances of this case. Under settled law, Worker would have the burden of persuasion if she were the one to file a petition with the Administration. *See Toynbee v. Mimbres Memorial Nursing Home,* 114 N.M. 23, 27, 833 P.2d 1204, 1208 (Ct.App. 1992); *Sanchez v. Molycorp, Inc.,* 113 N.M. 375, 378, 826 P.2d 971, 974 (Ct.App.1992). Worker could not file a claim for disability benefits, however, so long as the City was paying full benefits. *See* NMSA 1978, § 52–5–18 (Repl.Pamp.1987); *Armijo v. Co–Con Constr. Co.,* 92 N.M. 295, 296, 587 P.2d 442, 443 (Ct.App.), *cert. denied,* 92 N.M. 260, 586 P.2d 1089 (1978), *overruled on other grounds by Raines v. W.A. Klinger & Sons,* 107 N.M. 668, 763 P.2d 684 (1988), *and by Maitlen v. Getty Oil Co.,* 105 N.M. 370, 733 P.2d 1 (Ct.App. 1987). Thus, to induce Worker to file a claim the City would need to reduce the benefits it was paying. Although statutory sanctions against bad faith misconduct by an employer should discourage an employer from reducing payments unjustifiably, NMSA 1978, § 52–1–54(G) (Repl. Pamp.1987), the record in this case would certainly have supported a finding of good faith if the City had reduced Worker's benefits on its own instead of first filing its petition with the Administration. By pro-

ceeding in that manner the City would have ensured that Worker bore the burden of persuasion. To impose the burden of persuasion on the City because it chose a procedure more beneficial to Worker would deter other employers from taking the same path. The public policy expressed in *Wilson* suggests that the law should not be interpreted to discourage employers from (1) paying full benefits and filing a petition under Section 52–5–5, rather than (2) reducing benefits to induce the worker to file a petition. The burden of persuasion therefore should not shift to an employer who chooses the first course.

Nothing in the changes to the Act since *Wilson* suggests legislative repudiation of the public policy expressed in that opinion. In 1987 the legislature added a declaration of purpose to the Act. The declaration includes the following:

> It is the intent of the legislature in creating the worker's compensation division [1] that the laws administered by it to provide a workers' benefit system be interpreted to assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers who are subject to the provisions of the Workers' Compensation Act and the New Mexico Occupational Disease Disablement Law. It is the specific intent of the legislature that benefit claims cases be decided on their merits and that the common law rule of "liberal construction" based on the supposed "remedial" basis of workers' benefits legislation shall not apply in these cases. The workers' benefit system in New Mexico is based on a mutual renunciation of common law rights and defenses by employers and employees alike. Accordingly, the legislature hereby declares that the Workers' Compensation Act and the New Mexico Occupational Disease Disablement Law are not remedial in any sense and are not to be given a broad liberal construction in favor of the claimant or employee on the one hand, nor are the rights and interests of the employer to be favored over those of the employee on the other hand.

NMSA 1978, § 52–5–1 (Repl.Pamp.1987). If anything, this declaration of purpose—particularly the instruction to interpret the Act even-handedly—reinforces the public policy expressed in *Wilson.* We conclude that in this action Worker bore the burden of persuasion to establish her entitlement to benefits.

## II. AFFIRMABILITY OF THE AWARD

■ Worker's attorney argues vigorously and passionately that the WCJ's decision was a miscarriage of justice. Counsel recognizes, however, that this Court cannot judge the credibility of witnesses, reweigh the evidence, or make its own findings of fact. *See Tallman v. ABF (Arkansas Best Freight),* 108 N.M. 124, 126–30, 767 P.2d 363, 365–69 (Ct.App.), *cert. denied,* 107 N.M. 785, 109 N.M. 33, 781 P.2d 305 (1988). Our role is limited to deciding whether it was rational for the WCJ to determine that Worker had not satisfied her burden of persuasion in establishing that after March 25, 1990, she was disabled by her work-related accident. *See Sosa v. Empire Roofing Co.,* 110 N.M. 614, 616, 798 P.2d 215, 217 (Ct.App.1990). By that standard we must affirm.

■ For almost all of Worker's medical complaints, there was expert testimony by physicians that the complaints were not caused by Worker's fall on the job on January 30, 1989. Several physicians testified that the fall did not cause or aggravate Worker's multiple sclerosis. Physicians testified that her headaches probably were the result of chronic sinusitis, not her fall at work. Although the first fall at home that injured Worker's finger originally was attributed to leg weakness caused by the injury to Worker's back in the January 1989 fall at work, after Worker was diagnosed as having multiple sclerosis several physicians testified that Worker's lower-back injury probably did not cause either

---

1. For several years the administering authority for the Act was the workers' compensation division of the labor department.

fall at home. Other testimony may have supported contrary findings. But our task is not to determine whether the record would have supported a different result; it is only to determine whether the WCJ could properly reach the decision that was rendered. *See Bowles v. Los Lunas Sch.*, 109 N.M. 100, 104, 781 P.2d 1178, 1182 (Ct.App.), *cert. denied*, 109 N.M. 131, 782 P.2d 384 (1989). The WCJ had no duty in this case to recite why he relied on some expert testimony rather than contrary testimony. *See Empire W. Cos. v. Albuquerque Testing Lab.*, 110 N.M. 790, 794, 800 P.2d 725, 729 (1990) (findings required only on ultimate facts).

It appears, however, that the WCJ believed that Worker's accident of January 30, 1989, caused a "small central disc protrusion" at L5–S1 in Worker's spine. The physicians sometimes referred to the protrusion as a "herniation." Did the evidence before the WCJ compel a finding that Worker was disabled by the disc protrusion, or was it rational for the WCJ to find that Worker had not proved that she was disabled by her lower-back problem?

■ The disc injury was revealed by a CT scan taken on February 17, 1989. Despite that injury, Worker's treating physicians released her to work without restrictions for most of that year. On February 21, 1990, Dr. Diskant removed her from work on the ground that she could not "continue working in a field type of job which requires a lot of driving." He testified that it was his understanding that her duties had changed. He said: "[Worker] was complaining that she was not able to tolerate the degree of driving that was required of her. In light of the herniated disc, I thought that that complaint was plausible[.]" Dr. Diskant's removal of Worker from her job was predicated on Worker's complaints of pain. The WCJ did not need to credit Dr. Diskant's determination of disability if there was reason to doubt Worker's complaints. *See Nunez v. Smith's Management Corp.*, 108 N.M. 186, 189–90, 769 P.2d 99, 102–03 (Ct.App.1988) (even under uncontradicted-medical-evidence rule, which relates to causation rath-

er than extent of disability, WCJ need not credit uncontradicted medical testimony based on a disputed version of facts).

Worker's credibility was called into question throughout the proceedings. Her description of the January 30, 1989, accident differed substantially from that of another City employee who allegedly witnessed the accident. Various medical records indicate that she may have intentionally exaggerated her symptoms. For example, one doctor reported in the medical records:

> It might be noted however that when the patient attempted to get up onto the table she was able to move her chin close to her chest, which exhibits a range of motion far in excess of what she had demonstrated when asked to perform range of motion maneuvers with the cervical spine.

Also, the WCJ could have viewed Worker's conduct in responding to the City's offer of a new position as indicating a desire to avoid working. This and other evidence in the record created a rational basis for the WCJ to doubt Worker's credibility. Another fact finder may have found Worker to be fully credible, but this Court cannot reverse the WCJ on that ground. *See Tallman*, 108 N.M. at 127, 767 P.2d at 366.

Thus, the WCJ could rationally disbelieve Worker's complaints of pain unless the pain would necessarily follow from the objective medical findings. In that regard, a neurologist who reviewed the February 1989 CT scan stated, "Lumbosacral spine films showed a slight disc bulge at L5–S1 which I do not think is significant." A second neurologist, Dr. Michael Freedman, spoke of a "small but probably insignificant disk herniation of the lumbar spine." An MRI taken on August 9, 1989, showed that the degree of herniation of the disc had diminished. There was no evidence of thecal or nerve root compression. Dr. Freedman testified that from the physical findings he could not determine whether the disc was causing pain. He said that normal daily activities would not be a problem for Worker. A Physical Capacities Evaluation performed by the work performance center at Presbyterian Hospital in

April 1990 indicated no restriction on activities involving driving automotive equipment.

Again, although the record would support a finding in favor of Worker with respect to disability caused by her lower back injury, the WCJ could rationally decide that Worker had not satisfied her burden of establishing that the injury disabled her from performing her job. Therefore, we must affirm the WCJ's determination that Worker was not disabled after March 25, 1990.

### III. SUPPLEMENTAL RECORD

After Worker filed her notice of appeal she filed with the Administration an application to modify the disposition order pursuant to NMSA 1978, Section 52–5–9 (Repl.Pamp.1991). The WCJ denied the application. Worker did not appeal from the denial but moved this Court to allow a supplemental record on appeal that would include the pleadings relating to her application and the tape recordings of the hearing on the application. We granted the motion.

 Worker now requests us to consider in this appeal various evidence contained in the supplemental record. We deny the request. Our review of the order from which Worker appeals cannot be based on evidence that had not been presented to the WCJ at the time the order was issued. *See* SCRA 1986, 12–216(A) (Repl.1992) (question not preserved for appellate review if not invoked in lower tribunal); *Strickland v. Roosevelt County Rural Elec. Coop.*, 99 N.M. 335, 344, 657 P.2d 1184, 1193 (Ct.App. 1982), *cert. denied*, 99 N.M. 358, 658 P.2d 433, *cert. denied*, 463 U.S. 1209, 103 S.Ct. 3540, 77 L.Ed.2d 1390 (1983). Because Worker did not appeal from the WCJ's ruling on her application for modification, we need not decide whether the WCJ had jurisdiction to *deny* the application. *See Archuleta v. New Mexico State Police*, 108 N.M. 543, 548, 775 P.2d 745, 750 (Ct.App.), (noting authority concerning jurisdiction of trial court to hear motions pursuant to SCRA 1986, 1–060(B) during pendency of

appeal), *cert. denied*, 108 N.M. 384, 772 P.2d 1307 (1989).

### IV. CONCLUSION

For the reasons stated above, we affirm the disposition order of the Administration.

**IT IS SO ORDERED.**

MINZNER, C.J., and APODACA, J., concur.