1997-NMCA-022

934 P.2d 1074

**Tracey ELDRIDGE, as Parent and Guardian of Amelia Sedillo and as Representative of the Estate of Paul Sedillo, Plaintiff–Appellant,**

v.

**CIRCLE K CORPORATION, Self–Insured, Defendant–Appellee.**

No. 16987.

Court of Appeals of New Mexico.

Jan. 9, 1997.

Certiorari Denied Feb. 19, 1997.

Randi McGinn, McGinn & Associates, P.A., Albuquerque, for Appellant.

Carlos G. Martinez, Jeanne M. Bates, Butt, Thornton & Baehr, P.C., Albuquerque, for Appellee.

## OPINION

BOSSON, Judge.

1. Tracey Eldridge, as personal representative of the estate of Paul Sedillo (the Estate), challenges both the jurisdiction of the workers' compensation judge (WCJ) to hear this case and the standing of Circle K, the employer, to initiate a workers' compensation case for death benefits. The jurisdiction of the WCJ depends on whether Paul Sedillo's death was an accident which would be compensable under the Workers' Compensation Act (the Act), or whether his death was caused by the deliberate act of his employer, which may be compensable by a common law action in district court for intentional tort. The fundamental question is which forum, the district court or the WCJ, should make the initial determination of jurisdiction. We conclude as a matter of first impression that the district court is the proper forum and reverse the compensation order of the WCJ.

### FACTUAL AND LEGAL BACKGROUND

2. On August 29, 1993, Paul Sedillo was working alone on the late night shift for Circle K when he was shot and killed by a customer. The customer attempted to pay for merchandise with a stolen credit card. While Sedillo was trying to verify the credit card by telephone, the customer left the store. When Sedillo followed the customer into the parking lot, apparently to obtain the license number of his car, Sedillo was shot in the chest and died soon thereafter.

3. In September 1993, Circle K sent a check for funeral expenses to Sedillo's brother, Lawrence. The Estate responded that it was not seeking workers' compensation benefits because the Estate intended to pursue a common law action against Circle K for intentional tort. The Estate made clear that it would accept the check only with the understanding that there was no waiver of its rights to file a subsequent lawsuit in tort. The Estate did not file a claim for workers' compensation benefits.

4. On November 19, 1993, Circle K filed its own action with the Workers' Compensation Administration (WCA) requesting a determination of benefits due to Sedillo's dependents. Sedillo's only dependent was his minor child, Amelia Sedillo. Tracey Eldridge, the child's mother, was appointed personal representative for the Estate with regard to the workers' compensation action. In response to Circle K's workers' compensation complaint, Eldridge filed a motion to dismiss for lack of jurisdiction arguing that Circle K, as employer, had no standing to invoke jurisdiction of the Act and force the Estate into the WCA. Eldridge also maintained that the WCJ had no jurisdiction to hear the complaint.

5. On March 10, 1994, Eldridge and Lawrence Sedillo filed a tort action in district court seeking damages on behalf of the Es-

tate against Circle K for intentional wrongful acts, including wrongful death, intentional tort, breach of contract, intentional infliction of emotional distress, and loss of consortium. Specifically, the Estate claimed that Circle K's corporate policy required store clerks to confront and follow shoplifters and to work alone on the late night shift. Allegedly, these policies were a deliberate policy of management calculated to save money at the expense of employee safety. The tort suit is still pending in district court, and we intimate no opinion on the merits of those allegations against Circle K.

6. On June 2, 1994, the WCJ denied Eldridge's motion to dismiss and permitted the parties to begin discovery. A formal hearing was held on November 21, 1995, and the WCJ issued an order awarding the Estate compensation for accidental death under the Act. In the compensation order, the WCJ made numerous findings, including a determination that the WCJ had jurisdiction to decide the question of whether Circle K's acts were intentional or whether Sedillo's death was caused by accident. The WCJ determined that the Estate failed to establish that Circle K had committed an intentional wrong against Sedillo which would fall outside the Act, and therefore, the Act was the exclusive remedy for the Estate. Eldridge appeals from that order on behalf of the Estate.

## DISCUSSION

### Standard of Review

■ 7. Our Supreme Court has recently addressed the standard of review when an appellate court reviews an administrative agency's determination of its jurisdiction. *See Morningstar Water Users Ass'n v. New Mexico Pub. Util. Comm'n*, 120 N.M. 579, 582–83, 904 P.2d 28, 31–32 (1995). Agency jurisdiction is defined by statute and the determination of whether agency jurisdiction exists in a case is a question of law. *Id.* at 583, 904 P.2d at 32. Although a reviewing court may accord deference to an agency's determination on factual matters involving agency expertise, the court is not bound by the agency's interpretation of its jurisdiction. *Id.*

### Standing of Employer

■ 8. Initially, the Estate challenges the standing of Circle K, as employer, to bring a workers' compensation action before the WCA. Circle K responds that under NMSA 1978, Section 52–5–5(A) (Cum.Supp. 1996) "any party may file a claim with the director" including employers and insurers. However, the Estate argues that Section 52–5–5(A) does not apply because this is a death case. The Estate asserts that NMSA 1978, Section 52–1–31(B) (Repl.Pamp.1991) controls in death cases and does not permit an action to be brought by the employer. Section 52–1–31(B) states, in part:

In the case of the death of a worker who would have been entitled to receive compensation if death had not occurred, claim for compensation may be filed on behalf of his eligible dependents to recover compensation from the employer or his insurer. *Payment may be received or claim filed by any person whom the director or the court may authorize or permit on behalf of the eligible beneficiaries.* (Emphasis added.)

9. The Estate maintains that only Eldridge, as the person authorized by the director, is permitted to file a claim on behalf of the eligible dependent, her daughter. Circle K characterizes Section 52–1–31(B) as defining the statute of limitations for filing compensation claims and authorizing who may act in the place of a deceased worker. Circle K points out correctly that nothing in Section 52–1–31(B) restricts the employer from filing its own action as authorized in Section 52–5–5(A). Finally, Circle K suggests that if the legislature had intended a substantively different process for death claims, it would likely have included such a distinction in Section 52–5–5(A), which is the principal provision of the Act for initiating claims. We agree with Circle K's analysis.

■ 10. In construing the language of a statute, an appellate court's primary concern is to determine and give effect to legislative intent. *Douglass v. State, Regulation & Licensing Dep't*, 112 N.M. 183, 186, 812 P.2d 1331, 1333 (Ct.App.1991). When a statute has been amended, the amendments must be read in conjunction with the other

parts of the statute to give effect to each part and implement legislative intent. *Id.*

11. The New Mexico legislature significantly amended the Act in 1986, and again in 1987 and 1990. *See Wylie Corp. v. Mowrer*, 104 N.M. 751, 726 P.2d 1381 (1986); *Gallegos v. City of Albuquerque*, 115 N.M. 461, 462–64, 853 P.2d 163, 164–66 (Ct.App.1993); *see also* Kelly Brooks et al., Survey, *Workers' Compensation*, 22 N.M.L.Rev. 845 (1992). With the enactment of Section 52–5–5(A) in 1986, the legislature changed New Mexico workers' compensation law to permit either the employer or the worker to initiate a workers' compensation claim. This provision is unlike previous statutes which left it to the worker alone. *See Gallegos*, 115 N.M. at 463, 853 P.2d at 166. Section 52–1–31(B), upon which the Estate relies, was not changed when the legislature amended the Act to permit employers to initiate claims.

12. We believe the legislative intent behind Section 52–5–5(A) is clear: to create a new right in employers and insurance carriers to file claims, marking a distinct departure from previous practice. To adopt Eldridge's position on Section 52–1–31(B) would place a significant restriction on a right which is expressly granted employers for the first time under Section 52–5–5(A). The Eldridge position would have us read this exception into Section 52–5–5(A) by a process of inference. In our view, we would be restricting a choice the legislature has clearly granted the employer based upon a strained reading of the statute. Instead we interpret the two sections in a way that makes them consistent with each other in achieving a common legislative purpose. *See State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). We hold that Section 52–5–5(A) applies to death cases as well.

*Exclusivity of WCJ Jurisdiction*

13. The parties stipulated that Sedillo's death arose out of and in the course of his employment with Circle K. *See* NMSA 1978, § 52–1–2 (Repl.Pamp.1991) (employer liable to worker injured by accident arising out of and in the course of his employment); NMSA 1978, § 52–1–9 (Repl.Pamp.1991)

(remedies provided by the Act are the sole and exclusive remedies available to employee for accidental personal injury or death arising out of and in the course of employment). The Estate maintains that Sedillo's death falls outside the Act because it was not accidental, but rather resulted from intentional wrongs committed by Circle K against Sedillo. Therefore, according to the Estate, the WCJ did not have jurisdiction to hear the claims, and the district court is the proper forum to decide the Estate's claims for intentional tort. Circle K responds that Sedillo's death falls within the Act, and therefore, the Act defines all the rights and remedies available to the Estate. For the reasons that follow, we believe that both parties are right in part and wrong in part.

14. In a recent decision, our Supreme Court observed that the exclusivity provision of the Act does not bar a common law action when the underlying injury does not fall within the coverage formula of the Act. *Sabella v. Manor Care, Inc.*, 121 N.M. 596, 599, 915 P.2d 901, 904 (1996) (worker's action against employer for sex discrimination under New Mexico Human Rights Act not barred by exclusivity provisions of the Act). Professor Larson has also noted that a common law action for damages is not barred if the injury is not covered by workers' compensation, and he has acknowledged that under limited circumstances an intentional injury may establish the basis for an independent common law action. 2A Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* §§ 65.00, 68.11 (1996).

15. New Mexico courts have previously indicated that the exclusivity provision of the Act does not necessarily bar all tort actions against the employer. For example, in *Michaels v. Anglo American Auto Auctions, Inc.*, 117 N.M. 91, 93, 869 P.2d 279, 281 (1994), the Supreme Court held that an action for retaliatory discharge was not barred by the workers' compensation exclusivity provision. *See also Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 653, 905 P.2d 185, 193 (1995) (exclusivity provision did not bar worker's claims against former employer for intentional spoliation of evidence); *Russell v.*

*Protective Ins. Co.*, 107 N.M. 9, 11–12, 751 P.2d 693, 695–96 (1988) (separate tort action permitted against an insurer who intentionally refuses to pay compensation benefits), holding was superseded by § 52–1–28.1 on January 1, 1991; *Taylor v. Van Winkle's IGA Farmer's Mkt.*, 122 N.M. 486, 488, 927 P.2d 41, 43 (Ct.App.1996) (holding that district court did not err in determining it had jurisdiction over worker's tort action; default judgment not void for lack of subject matter jurisdiction), *cert. denied*, 122 N.M. 416, 925 P.2d 882 (1996).

16. This Court has made the same observation when discussing whether a worker's injury was caused by an intentional act of the employer. *See Johnson Controls World Servs., Inc. v. Barnes*, 115 N.M. 116, 118, 847 P.2d 761, 763 (Ct.App.1993) (exclusivity provision does not preclude common law action for damages when the injury is not accidental but intentionally inflicted by employer or the deliberate consequence of employer's behavior); *Maestas v. El Paso Natural Gas Co.*, 110 N.M. 609, 611–12, 798 P.2d 210, 212–13 (Ct.App.1990) (same); *Gallegos v. Chastain*, 95 N.M. 551, 554, 624 P.2d 60, 63 (Ct.App. 1981) (an actual intent to injure by employer could be basis for liability outside workers' compensation act); *Sanford v. Presto Mfg. Co.*, 92 N.M. 746, 747, 594 P.2d 1202, 1203 (Ct.App.1979) (same).

17. Therefore, it appears that more than one forum may have jurisdiction over the general subject matter depending on how it is characterized. The possibility of overlapping, concurrent jurisdiction raises a potential problem which, unless resolved, is capable of repetition. The question is which forum should proceed and in what order toward a fair and systematic resolution of all claims.

18. Circle K relies on the literal language of the statute and the existence of an employment relationship to argue that the WCJ is required to proceed, simultaneously if necessary, with another claim under adjudication in district court. Circle K's argument attempts too much. This case involves more than just a routine claim for workers' compensation benefits. By deciding that Sedillo's death was accidental, the WCJ also decided against the Estate's claim for intentional tort; one is the mirror image of the other. The WCJ specifically found that the Estate had failed to meet its burden of establishing that the death was caused by an intentional act of Circle K. These and other findings have a direct impact upon the tort claims, and yet both parties agree that a WCJ has no jurisdiction to decide matters of common law.

19. Workers' compensation proceedings are designed to be expeditious and therefore are likely to be completed before any parallel litigation in court. If we were to adopt Circle K's position and encourage parallel proceedings, we would add to the burden of the district judge, who would have to decide what weight, if any, to place on the administrative findings. *See* Allan D. Vestal, *Preclusion/Res Judicata Variables: Adjudicating Bodies*, 54 Geo.L.J. 857, 874 (1966). For example, Circle K has used the WCJ findings to file a motion for summary judgment based upon issue preclusion, asking the district court to bar any further litigation over whether Sedillo's death was accidental or intentional. For reasons that will soon become clear, we wish to discourage such a result. We are also concerned that parallel proceedings would add unnecessarily to the workload of the WCJ and burden litigants unfairly with the complexity and expense of dual-track litigation.

20. For these reasons, we cannot ignore the conflicts that arise from overlapping jurisdiction. We feel obligated to make an effort at creating an orderly procedure for the parties. In so doing, we acknowledge the WCJ's concurrent, statutory jurisdiction to decide claims filed with the WCA, and we are not impinging upon that authority. We are simply directing the order of proceedings in the interest of sound judicial policy. Circle K directs us first to the doctrine of primary jurisdiction.

*Primary Jurisdiction*

21. The doctrine of primary jurisdiction arises when both a court and an administrative agency have concurrent jurisdiction. It is a prudential rule used by courts to allocate between courts and agencies the initial

responsibility for resolving a dispute when their jurisdictions overlap. The doctrine generally is invoked when an action has been filed in district court and the opposing party argues that the better forum is an administrative agency. *See* Sidney A. Shapiro, *Abstention and Primary Jurisdiction: Two Chips Off the Same Block?—A Comparative Analysis,* 60 Cornell L.Rev. 75 (1974). Although this case presents the opposite situation, with the action filed first with the administrative agency, the doctrine may nonetheless provide a useful rationale for resolving this dispute:

22. Our Supreme Court discussed primary jurisdiction in *State ex rel. Norvell v. Arizona Public Service Co.,* 85 N.M. 165, 170, 510 P.2d 98, 103 (1973). The principal criterion in deciding whether the doctrine applies is the need for the particular expertise of the agency to resolve factual issues. *Id.* at 171, 510 P.2d at 104. In some circumstances, it may be appropriate for a court to refer the resolution of an underlying issue to an agency that has the advantage of specialized knowledge, experience, and more flexible procedures. *Id.* (citing *Far East Conference v. United States,* 342 U.S. 570, 574–75, 72 S.Ct. 492, 494–95, 96 L.Ed. 576 (1952), for the proposition that agency review appropriate for issues of fact not within the conventional experience of the courts). However, the expertise of a technically expert body may not be needed if the question to be resolved is "within the conventional competence of the courts." *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 305–06, 96 S.Ct. 1978, 1987–88, 48 L.Ed.2d 643 (1976) (in an ordinary fraud action against an airline, expertise of the Civil Aeronautics Board, which had concurrent jurisdiction, was not likely to be helpful). The decision whether to invoke primary jurisdiction should be based on " 'which course would best serve the ends of justice.' " *Norvell,* 85 N.M. at 171, 510 P.2d at 104 (quoting *Wisconsin Collectors Ass'n v. Thorp Fin. Corp.,* 32 Wis.2d 36, 145 N.W.2d 33, 37 (1966)).

23. We note at least two factors which favor proceeding first in district court instead of in the WCA. First, the WCA was created to manage benefit payments to workers injured in work-related accidents by the use of specialized tribunals that could quickly and efficiently process a large volume of cases by the use of informal and expedited procedures. NMSA 1978, § 52–5–1 (Repl. Pamp.1991). *See generally* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 80, at 568–77 (5th ed.1984) (purpose of workers' compensation system is to compensate employees for their workplace injuries by substituting an administrative proceeding for a negligence action brought in the civil courts). By virtue of specialization, experience, and expedited procedure, the WCA is the proper forum for resolving matters that are clearly reserved to workers' compensation such as insurance coverage, employment status, average weekly wage, impairment rating, and permanent and partial disability determinations. However, the expertise and procedural advantages of the WCA in handling a typical workers' compensation case afford the WCJ no advantage in resolving a common law claim for intentional wrong-doing.

24. Second, the district court is a constitutional court of general jurisdiction in which parties are afforded full discovery, actual confrontation of witnesses, and the right to a jury trial. In contrast, the WCJ presides over an administrative court of limited jurisdiction with restricted opportunities for discovery [1], limited live testimony, and no jury trial. If a worker is forced to proceed in the Workers' Compensation Division instead of district court, his ability to prove that he has a claim for intentional tort may suffer from the restricted workers' compensation process. The worker's constitutional right to trial by jury, to the extent it applies, may be placed in jeopardy.

25. Common law claims for intentional tort involve questions that are "within the

---

1. In the case before us, the Estate argues that it has so far been allowed only a handful of depositions by the WCJ yet seeks to take over 40 depositions in the tort case in district court. The Estate also indicated it would pursue other discovery avenues in district court, such as interrogatories, production of documents, and requests for admission which are not commonly part of pre-trial discovery in the WCA.

conventional competence of the courts." *Nader,* 426 U.S. at 305–06, 96 S.Ct. at 1987–88. Neither counsel could cite a New Mexico case in which a WCJ had decided the kinds of issues that characteristically arise in an intentional tort action. To the contrary, disputes involving whether the Act is the exclusive remedy for a worker have arisen in district court with a district judge determining the nature of the claims and the applicability of the Act. *See, e.g., Johnson Controls,* 115 N.M. at 118, 847 P.2d at 763. The common law claim in this case does not invoke the expertise of the WCJ in determining whether the Estate's claim is within the coverage of the Act. Therefore, we conclude that this case does not call for deference to the administrative agency under the doctrine of primary jurisdiction. *See Lamar v. Ford Motor Co.,* 409 S.W.2d 100, 107 (Mo.1966) (primary jurisdiction doctrine does not apply to common law claim against employer for assault and battery).

### District Court Priority Jurisdiction

26. Although we conclude that the doctrine of primary jurisdiction does not apply, the same prudential considerations underlying that doctrine lead us, in turn, toward a different solution. Our Supreme Court in *Norvell* spoke of the occasional need for judge-made remedies in the interest of "coordination between the judicial and administrative arms of government." 85 N.M. at 170, 510 P.2d at 103. Quoting from the United States Supreme Court, the *Norvell* court spoke of the need for coordinated action in the following terms:

> * * * [C]ourt and agency are not to be regarded as wholly independent and unrelated instrumentalities of justice, each acting in the performance of its prescribed statutory duty without regard to the appropriate function of the other in securing the plainly indicated objects of the statute. Court and agency are the means adopted to attain the prescribed end, and so far as their duties are defined by the words of the statute, those words should be construed so as to attain that end through coordinated action.

*Id.* (quoting *United States v. Morgan,* 307 U.S. 183, 191, 59 S.Ct. 795, 799, 83 L.Ed. 1211 (1939)). In our view, this kind of "coordinated action" can best be obtained by having the WCJ defer to the district court. In the limited circumstance of this type of case, when the worker claims a cause of action based on deliberate, intentional injury by the employer of the kind referred to in *Johnson Controls,* 115 N.M. at 118, 847 P.2d at 763, we hold that the district court should exercise initial jurisdiction to determine jurisdiction. Upon a worker's request, the WCJ should defer, suspending further action, until the tort claim is finally resolved, including appeal if necessary. If the tort action fails, the workers' compensation proceeding can then move forward. For the reasons stated earlier, we would prefer to have preclusive effect, if any, apply to final orders or judgments of the district court, where the matter will receive a full adjudication, rather than the reverse.

27. We believe that this kind of coordinated action is also consistent with the legislative purpose in passing the Act in its current form. As a practical matter, this potential for conflict would never have arisen before 1986 when only the worker could file; the worker's selection of forum prevented parallel proceedings. The question is whether the 1986 amendment permitting other parties to file a claim indicates any intent to encourage this kind of jurisdictional dispute.

28. Nothing in the 1986 Act or its successors would indicate that the legislature intended to embroil the workers' compensation process in the conflict evidenced in this case. A statute intended to provide expeditious resolution of a limited type of dispute should be interpreted to avoid just the imbroglio this case illustrates. The legislature merits the presumption that it intended to organize workers' compensation proceedings to achieve the Act's stated purpose in a fair and reasonable manner and not to frustrate that purpose.

29. We recognize that the literal language of the Act after 1986 authorizes employers to file claims, and that right is fully enforceable in this Court. But our task

is not to apply language literally when it would lead to counterproductive, inconsistent, and absurd results; we must harmonize the statutory language to achieve the overall legislative purpose. *See State ex rel. Helman v. Gallegos,* 117 N.M. 346, 352–53, 871 P.2d 1352, 1358–59 (1994). "'Statutes are to be read in a way that facilitates their operation and the achievement of their goals.'" *Castillo v. County of Santa Fe,* 107 N.M. 204, 206–07, 755 P.2d 48, 50–51 (1988) (quoting *Miller v. Department of Transp.,* 106 N.M. 253, 255, 741 P.2d 1374, 1376 (1987)). We can best achieve the legislative goal by allowing the WCJ to decide claims that clearly fall within the Act, and shifting to the district court the task, for which it is better equipped, of deciding whether claims have been stated that fall outside the Act.

30. Finally, we also acknowledge the possibility that this policy change may impose some administrative burden upon both the WCA and employers. For example, the WCA will have to hold some claims open for an undetermined period of time awaiting final judicial resolution of the claim for intentional tort, and in a few instances this deferment period may be substantial. However, despite this possibility we remain convinced that this Court cannot turn a blind eye to the current state of affairs. We note that in this very case it is the district court which had to suspend adjudication and await action by the WCJ. We are resolute that this is wrong both as a matter of judicial policy and from a statutory and constitutional perspective. Whatever additional problems may arise in future disputes, we are confident they can be fairly resolved either in litigation before the courts or upon further examination by the legislature.

*CONCLUSION*

31. We reverse the decision of the WCJ in this case and remand with instructions that the WCJ is to defer further action on Circle K's claim until the Estate's action in district court for intentional tort has been resolved either in that court or on appeal.

32. IT IS SO ORDERED.

APODACA, C.J., and ARMIJO, J., concur.