189 P.3d 663 (2008)
2008-NMSC-047
STATE ex rel. The REGENTS OF EASTERN NEW MEXICO UNIVERSITY, Petitioner,
v.
Hon. Theresa M. BACA, Second Judicial District Court Judge, Respondent, and
DKD Electric L.L.C., Real Party in Interest.
No. 30,950.
Supreme Court of New Mexico.
July 30, 2008.
*664 Frank C. Salazar, Christopher A. Holland, Sutin, Thayer & Browne, P.C., Albuquerque, NM, for Petitioner.
Gary K. King, Attorney General, Scott Fuqua, Assistant Attorney General, David K. Thomson, Assistant Attorney General, Santa Fe, NM, for Respondent.
Margaret C. Ludewig, Stephanie Landry, Landry & Ludewig, L.L.P., Sean R. Calvert, Calvert Menicucci, P.C., Albuquerque, NM, for Real Party in Interest.

OPINION
PER CURIAM.
{1} This case requires us to address the restrictions on using a declaratory judgment action as an alternative to statutory procedures for judicial review of an agency action. The case began when DKD Electric, LLC (DKD), submitted an unsuccessful bid on a contract with Eastern New Mexico University (ENMU), controlled by the Procurement Code, NMSA 1978, §§ 13-1-28 to -199 (1984, as amended through 2006). DKD filed a protest, but instead of waiting for a decision on the protest and then seeking judicial review in the ninth judicial district, where ENMU is located, DKD filed a complaint in the second judicial district, its own place of residence, seeking a declaratory judgment and injunctive relief in the matter. We hold that because an established statutory procedure existed for seeking judicial review and DKD, the protestor, had initiated that appeals process, the protestor could not circumvent the restrictions on where an administrative appeal could be filed by filing a declaratory judgment action. Accordingly, we order the Honorable Theresa Baca in the second judicial district to transfer the case to the Ninth Judicial District Court in Roosevelt County.

BACKGROUND
{2} In September 2007, ENMU, whose principal location is in Roosevelt County, solicited bids for a campus electrical distribution upgrade project. The contract for the project was awarded to Wilson & Wilson General Contractors, Inc. (Wilson). On December 22, 2007, DKD filed a protest pursuant to Section 13-1-172 of the Procurement Code, challenging the legality of the award to Wilson and requesting a hearing. A hearing officer in the protest was appointed on January 14, 2008, and the administrative hearing was set for January 23, 2008. Following that *665 hearing, the hearing officer denied DKD's protest in a decision letter, dated February 4, 2008, and informed DKD of its right to judicial review pursuant to Section 13-1-183 of the Procurement Code. DKD did not appeal the decision.
{3} Before the hearing officer had been appointed, however, DKD filed a complaint in the second judicial district on January 10, 2008, asking the court to declare the contract between ENMU and Wilson unlawful and to grant injunctive relief halting the project. The district court held a hearing on the complaint on January 18, 2008, and denied the application for a temporary restraining order but set a hearing on the declaratory judgment issue for February 13, 2008. ENMU moved to dismiss DKD's complaint for lack of jurisdiction and failure to exhaust administrative remedies. On February 11, 2008, DKD amended its complaint in the declaratory judgment action, to include additional claims for mandamus, inverse condemnation, civil rights violations, breach of contract, and unjust enrichment. The district court denied the motion to dismiss, and set a hearing to determine if a preliminary injunction or writ of mandamus should issue against ENMU. Before that hearing could occur, ENMU filed with this Court a motion for a stay of the proceedings in the second judicial district, which we granted, and a petition for an extraordinary writ to prevent the second judicial district from hearing the case.

DISCUSSION
{4} ENMU argues that DKD's complaint constitutes an administrative appeal, for which jurisdiction lies only in the ninth judicial district. DKD, on the other hand, makes two arguments for why the case was properly filed in the second judicial district: (1) that appellate jurisdiction over issues arising from the bid protest is not restricted to the Ninth Judicial District Court and (2) that the Second Judicial District Court had original jurisdiction over the matter.

Appellate Jurisdiction
{5} ENMU argues that the issues raised in DKD's initial complaint filed in the second judicial district were identical to those raised in the bid protest, and consequently, this case constitutes an administrative appeal. Accordingly, ENMU argues both Article VI, Section 13 of the New Mexico Constitution and Section 13-1-183 of the Procurement Code vest exclusive jurisdiction over an administrative appeal in the ninth judicial district. ENMU relies on the provision in Article VI, Section 13 stating that the district court shall have "appellate jurisdiction of all cases originating in inferior courts and tribunals in their respective districts." ENMU contends that because the appeal had its origins in an administrative tribunal in the ninth judicial district, the Ninth Judicial District Court, and not the Second Judicial District Court, had jurisdiction over the appeal.
{6} Consistent with this constitutional provision vesting jurisdiction in the ninth judicial district, ENMU continues, the Procurement Code also requires the appeal to be heard there. The Procurement Code sets forth a clear procedure for protesting and appealing the solicitation or award of a public works project. Section 13-1-172 sets out how that procedure is initiated.
Any bidder or offeror who is aggrieved in connection with a solicitation or award of a contract may protest to the state purchasing agent or a central purchasing office. The protest shall be submitted in writing within fifteen calendar days after knowledge of the facts or occurrences giving rise to the protest.
Section 13-1-175 then requires "[t]he state purchasing agent, a central purchasing office or a designee of either" to issue a determination on the protest, which gives the reasons for the determination and informs the protestant of the right to judicial review, pursuant to Section 13-1-183. Finally, Section 13-1-183 states that "[a]ll actions authorized by the Procurement Code ... for judicial review of a determination shall be filed pursuant to the provisions of [NMSA 1978, Section 39-3-1.1 (1999)]." Under Section 39-3-1.1(C), "[t]he appeal may be taken to the district court for the county in which the agency maintains its principal office or the district court of any county in which a hearing on the matter was conducted." ENMU argues that, under this statutory scheme, any appeal taken *666 from the decision of the hearing officer should have been filed in the Ninth Judicial District Court because ENMU's principal office and the administrative hearing were in Portales, in the ninth judicial district.
{7} In response, DKD sidesteps the specific limitations on the district courts' appellate jurisdiction set forth in Article VI, Section 13, and relies on the provision relating to the district courts' original jurisdiction, which is extremely broad. See N.M. Const. art. VI, § 13 ("The district court shall have original jurisdiction in all matters and causes not excepted in this constitution...."). Pointing out that Article VI, Section 13 confers jurisdiction over "special cases and proceedings as may be conferred by law" and grants power "to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, prohibition and all other writs, remedial or otherwise," DKD also contends that, consistent with Article VI, Section 13, the legislature has expanded the district courts' jurisdiction beyond reviewing "tribunals in their respective districts" by enacting NMSA 1978, Section 38-3-1.1 (1988), which provides that "[a]ll district courts have jurisdiction to review the action of any executive branch, agency or department in those cases in which a statute provides for judicial review." DKD suggests that this statutory provision does not conflict with the specific restrictions in Section 39-3-1.1(C) where administrative appeals are to be filed, which it argues are permissive.
{8} DKD then asserts that the jurisdiction described in Article VI, Section 13 is only limited by the venue statute, NMSA 1978, § 38-3-1(G) (1988), which states that "suits against the officers or employees of a state educational institution ... shall be brought in the district court of the county in which the principal office of the state educational institution is located or the district court of the county where the plaintiff resides." Accordingly, DKD states, it is permitted to file a lawsuit against ENMU in Bernalillo County, where its principal place of business is located. [Id.]
{9} We are not persuaded that the appellate jurisdiction described in Article IV, Section 13 is as expansive as DKD suggests. State constitutions, unlike the federal constitution, do not grant power to the three branches of government, but provide limitations on power. See State ex rel. Clark v. Johnson, 120 N.M. 562, 570, 904 P.2d 11, 19 (1995) ("`[D]eeply rooted in American Jurisprudence is the doctrine that state constitutions are not grants of power to the legislative, to the executive and to the judiciary, but are limitations on the powers of each. No branch of the state may add to, nor detract from its clear mandate.'") (quoting State ex rel. Hovey Concrete Prods. Co. v. Mechem, 63 N.M. 250, 252, 316 P.2d 1069, 1070 (1957), overruled on other grounds by Wylie Corp. v. Mowrer, 104 N.M. 751, 726 P.2d 1381 (1986)). Thus, contrary to the argument made by DKD that the grant of jurisdiction in the New Mexico Constitution is limited only by the venue statute, the jurisdiction and venue authorized by statute are confined by the limitations of our state constitution, which restricts the district courts' appellate jurisdiction to "cases originating in inferior courts and tribunals in their respective districts." N.M. Const. art. VI, § 13.
{10} Consistent with this constitutional mandate, Section 39-3-1.1(C), which creates a comprehensive scheme for appealing final decisions of certain administrative agencies, provides that such "[an] appeal may be taken to the district court for the county in which the agency maintains its principal office or the district court of any county in which a hearing on the matter was conducted." See Hyden v. N.M. Human Servs. Dep't., 2000-NMCA-002, ¶¶ 2-3, 128 N.M. 423, 993 P.2d 740 (observing that the legislature adopted this comprehensive administrative appeals legislation to simplify and standardize the method for obtaining judicial review of final decisions of certain administrative agencies). We are not persuaded by DKD's argument that the use of the word "may" in Section 39-3-1.1(C) permits an administrative appeal to be brought in any district court. Instead, we read it to mean that the appeal itself is permissive and not mandatory. Reading the statute as DKD asks us to would render the provision unconstitutional. See Lovelace Med. Ctr. v. Mendez, 111 N.M. 336, 340, 805 P.2d 603, 607 *667 (1991) ("It is, of course, a well-established principle of statutory construction that statutes should be construed, if possible, to avoid constitutional questions."). Moreover, reading Section 39-3-1.1(C) as permissive would render it superfluous, and we refrain from reading statutes in a way that renders provisions superfluous. See State v. Rivera, 2004-NMSC-001, ¶ 18, 134 N.M. 768, 82 P.3d 939. Similarly, we are not persuaded that the legislature could have intended the general jurisdictional and venue statutes, Section 38-3-1.1 and Section 38-3-1, to unconstitutionally expand the appellate jurisdiction of the district court provided for in Article VI, Section 13. See Seidenberg v. N.M. Bd. of Med. Exam'rs, 80 N.M. 135, 138-39, 452 P.2d 469, 472-73 (1969) (stating that we presume the legislature acts within the bounds of the constitution in enacting statutes).
{11} DKD further seeks to persuade us, however, that the provision in Article VI, Section 13, limiting the district courts' appellate jurisdiction to "all cases originating in inferior courts and tribunals in their respective districts," is inapplicable because the administrative hearing in Portales did not constitute an "inferior tribunal." DKD argues, without citation to legal authority, that a tribunal is "an established adjudicatory tribunal akin to a court" and that the hearing provided in Section 13-1-172 of the Procurement Code does not satisfy that standard. Specifically, DKD argues that the hearing officer, defined in Section 13-1-174 as "[t]he state purchasing agent, a central purchasing office or a designee of either," is neither qualified nor impartial and that the procedure does not provide for sworn testimony or discovery.
{12} The term "administrative tribunal" is commonly used to describe a non-judicial adjudication. See Bd. of Educ. of Carlsbad Mun. Sch. v. Harrell, 118 N.M. 470, 479-80, 882 P.2d 511, 520-21 (1994). As we stated in Harrell, due process does not require that a decision-maker be a judge or an attorney. Id. at 479, 882 P.2d at 520. It simply requires "an impartial decision-maker." Id. And, as ENMU points out, DKD did not challenge the objectivity of the hearing officer before the hearing and has not produced evidence to overcome the presumption of administrative regularity. See Wing Pawn Shop v. Taxation & Revenue Dep't, 111 N.M. 735, 743, 809 P.2d 649, 657 (Ct.App. 1991). Moreover, this Court has recognized the legislature's authority to assign adjudicative authority to administrative tribunals when judicial review of the decisions of those bodies satisfies due process. See Harrell, 118 N.M. at 483-84, 882 P.2d at 524-25.
{13} As we have discussed, in enacting the Procurement Code, the legislature created an administrative process that allows an aggrieved bidder or offeror to "protest to the state purchasing agent or a central purchasing office," to receive a reasoned decision from the hearing officer, and to obtain judicial review of the administrative decision pursuant to Section 39-3-1.1, which in this case is in the Ninth Judicial District Court. See §§ 13-1-172, -174, and -183. In this case, the proceeding complied with that process and constituted an administrative tribunal, making the jurisdictional limits in Article VI, Section 13 applicable to this case.
{14} For the foregoing reasons, we agree with ENMU that Article VI, Section 13 and Section 39-3-1.1 control the appellate jurisdiction of the district court in this case. Thus, an appeal from the hearing officer's decision should have been brought in the Ninth Judicial District Court, and the Second Judicial District had no appellate jurisdiction over this matter.

Original Jurisdiction
{15} Having determined that the Second Judicial District Court had no appellate jurisdiction in this matter, we consider DKD's alternate argument that the Second Judicial District Court had original jurisdiction over the case and that it was not required to exhaust its administrative remedies before filing its lawsuit in the district court.[1]
*668 {16} The requirement that a party exhaust its administrative remedies states that "[w]here relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." Smith v. City of Santa Fe, 2007-NMSC-055, ¶ 26, 142 N.M. 786, 171 P.3d 300 (quoted authority omitted). ENMU argues that under the facts of this case, before resorting to the courts by filing a declaratory judgment action, DKD was required to exhaust its statutory administrative remedies and is not permitted to make an end-run around the appeals process set forth in the Procurement Code. See Associated Petroleum Transp., Ltd. v. Shepard, 53 N.M. 52, 55, 201 P.2d 772, 774-75 (1949). Associated Petroleum Transport involved a tax protest that was not filed in a timely manner. Id. at 54-55, 201 P.2d at 774. Subsequently, the protestors in that case attempted to file a declaratory judgment action, which was dismissed for failure to exhaust administrative remedies. Id. at 53, 55, 201 P.2d at 773, 775.
{17} While DKD does not directly address that case, it argues either that its administrative remedies were exhausted when it obtained a final ruling from the hearing officer, or that it was not required to exhaust its administrative remedies. DKD relies on Takhar v. Town of Taos, 2004-NMCA-072, ¶ 1, 135 N.M. 741, 93 P.3d 762, in which the plaintiff was denied a special use permit by the zoning commission, but did not appeal and subsequently filed an action in district court for estoppel and inverse condemnation. Our Court of Appeals observed that the district court action raised different issues from the one before the hearing officer and noted that these questions could not have been ruled on by the administrative body. Id. ¶¶ 17-19. Thus, the Court held that the plaintiff was not precluded from filing an action in district court for estoppel and inverse condemnation. Id. ¶ 19.
{18} We agree, as a general principle, that administrative remedies do not have to be exhausted when it would be futile to do so or when a question of law is at issue. See Smith, 2007-NMSC-055, ¶ 27, 142 N.M. 786, 171 P.3d 300. We also agree that the original jurisdiction of the district court is broad. Article VI, Section 13 provides that "[t]he district court shall have original jurisdiction in all matters and causes not excepted in this constitution, and such jurisdiction of special cases and proceedings as may be conferred by law. ..." And, as DKD points out, the venue statute, Section 38-3-1(G), provides that
suits against the officers or employees of a state educational institution as defined in Article 12, Section 11 of the constitution of New Mexico, as such, shall be brought in the district court of the county in which the principal office of the state educational institution is located or the district court of the county where the plaintiff resides.
Because DKD's principal place of business is in the second judicial district, DKD is generally correct in stating that jurisdiction and venue over a lawsuit brought by DKD against ENMU would lie in the Second Judicial District Court. Indeed, ENMU acknowledges that if, for example, this were a case brought under the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-1 to -27 (1976, as amended), the lawsuit could have been filed in the Second Judicial District Court.
{19} The lawsuit originally filed in the Second Judicial District Court, however, was a declaratory judgment action seeking resolution *669 of a matter arising from an administrative matter. We are presented, therefore, with a similar question to one we recently addressed in Smith: the interaction between administrative proceedings and declaratory judgment actions. 2007-NMSC-055, ¶¶ 12-27, 142 N.M. 786, 171 P.3d 300. Smith involved two separate groups of plaintiffs who filed declaratory judgment actions challenging the legality of a city ordinance addressing well-drilling, the type of purely legal question specifically permitted under NMSA 1978, Section 44-6-4 (1975) of the Declaratory Judgment Act. Smith, 2007-NMSC-055, ¶¶ 2-5, 14, 142 N.M. 786, 171 P.3d 300. The first group of plaintiffs, however, had applied for a city permit to drill a well, and when the permit was denied, initiated the appeals process. Id. ¶¶ 3-4. Instead of seeking judicial review of the denial of the permit, and after the time had run to do so, those plaintiffs filed a separate declaratory judgment action challenging the legality of the city ordinance requiring a city permit. Id. ¶ 5. The second group of plaintiffs did not apply for a city permit, but joined with the first plaintiffs in filing the declaratory judgment action. Id. ¶ 4.
{20} We acknowledged in Smith that "[t]he Declaratory Judgment Act is a special proceeding that grants the district courts the `power to declare rights, status and other legal relations whether or not further relief is or could be claimed.'" Id. ¶ 13 (quoting NMSA 1978, § 44-6-2 (1975)). And we recognized that challenging the legality of an ordinance appeared to be a claim that fell within the Act's authority. Id. ¶ 15. However, while we acknowledged the role of declaratory judgment actions, we stressed that "a declaratory judgment action challenging an administrative entity's authority to act ordinarily should be limited to purely legal issues that do not require fact-finding by the administrative entity." Id. ¶ 16 (citing Grand Lodge of Masons v. Taxation & Revenue Dep't, 106 N.M. 179, 180-83, 740 P.2d 1163, 1164-67 (Ct.App.1987)). And we stated that "we must remain mindful of some important limitations on the use of declaratory judgment actions to review the propriety of administrative actions." Id. ¶ 15, 740 P.2d 1163. We specifically cautioned
against using a declaratory judgment action to challenge or review administrative actions if such an approach would foreclose any necessary fact-finding by the administrative entity, discourage reliance on any special expertise that may exist at the administrative level, disregard an exclusive statutory scheme for the review of administrative decisions, or circumvent procedural or substantive limitations that would otherwise limit review through means other than a declaratory judgment action.
Id. Therefore, even though the issues raised in Smith were legal and fell within the scope of the Declaratory Judgment Act, we held that the first group of plaintiffs, who had initiated the appeals process, were required to comply with the procedures "that would otherwise govern judicial review of the administrative decision," including the specific time limits within which to file an appeal. Id. ¶ 23. Although we held that the second group of plaintiffs, who had not applied for a city permit or initiated any administrative process, were not bound by those time limits in filing a declaratory judgment action, we did not address the requirements of where such an action should be filed. See id. ¶ 25.
{21} In the case before us, DKD asserts that the issues it raised were purely legal, requiring a decision on the validity of a contract. Section 44-6-4 of the Declaratory Judgment Act states that "[a]ny person interested under a ... written contract ... or whose rights, status or other legal relations are affected by a ... contract ..., may have determined any question of construction or validity arising under the ... contract ... and obtain a declaration of rights, status or other legal relations thereunder." Thus, the legal question of the validity of a contract appears to be a proper matter for a declaratory judgment action. We note, however, that DKD's complaint and its response to ENMU's petition filed in this Court contained factual allegations that had been made in the bid protest and which were addressed by the hearing officer. Moreover, it appears that DKD's concern is not with the construction or the validity of the contract itself, but with the construction of NMSA 1978, Section 60-13-12(B) (1989, repealed effective July 1, *670 2006) (addressing the requirement that contractors be licensed to perform the work they contract for), which would also appear to be a proper matter for a declaratory judgment action.
{22} Even if DKD is correct in claiming it raises only legal issues and a declaratory judgment action was authorized, DKD initiated the administrative review process by filing a bid protest before pursuing a declaratory judgment action. And in this case, unlike in Smith, DKD had a specific statutory right to judicial review of the decision on the bid protest. Under those circumstances, DKD could not circumvent the established procedures for judicial review and was thus obligated either to pursue its right to judicial review or to file its declaratory judgment action in compliance with the procedures for administrative appeal set out in Section 39-3-1.1, which included filing in the Ninth Judicial District Court, not in the Second Judicial District Court.
{23} In this case, unlike in Smith, DKD's declaratory judgment action was timely filed, albeit in the wrong judicial district. Therefore, we will treat this case as if it were an action filed consistent with the procedures set out in the Procurement Code and the administrative appeal statute and exercise our power of superintending control to order the Second Judicial District Court to transfer the case to the Ninth Judicial District Court. See Marsh v. State, 95 N.M. 224, 227, 620 P.2d 878, 881 (1980) (exercising superintending control to transfer a case from Valencia County to McKinley County).

CONCLUSION
{24} For the foregoing reasons, the Second Judicial District Court is ordered to transfer this case to the Ninth Judicial District Court in Roosevelt County.
{25} IT IS SO ORDERED.
Chief Justice EDWARD L. CHÁVEZ, Justices PATRICIO M. SERNA, PETRA JIMENEZ MAES, RICHARD C. BOSSON, and CHARLES W. DANIELS.
NOTES
[1] DKD also argues that the Second Judicial District Court had primary jurisdiction over the case. Primary jurisdiction and original jurisdiction are separate matters. The doctrine of primary jurisdiction, related to the requirement of exhaustion of administrative remedies, "arises when both a court and an administrative agency have concurrent jurisdiction." Eldridge v. Circle K Corp., 1997-NMCA-022, ¶ 21, 123 N.M. 145, 934 P.2d 1074. The doctrine is not technically a matter of jurisdiction. See MFS Sec. Corp. v. N.Y. Stock Exch., Inc., 277 F.3d 613, 621-22 (2d Cir.2002). "It is a prudential rule used by courts to allocate between courts and agencies the initial responsibility for resolving a dispute when their jurisdictions overlap." Eldridge, 1997-NMCA-022, ¶ 21, 123 N.M. 145, 934 P.2d 1074. It is "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." United States v. W. Pac. R.R. Co., 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). We decline to address the issues of whether the district court abused its discretion and should have recognized the primary jurisdiction of the agency because this issue was not specifically argued below.