1998-NMCA-125

964 P.2d 862

**John PADILLA, Plaintiff–Appellant,**

**v.**

**INTEL CORPORATION, a Delaware Corporation, John Doe Corporation, Specialty Drywall, Inc., a foreign corporation, and Chaparral Materials, Inc., a foreign corporation, Defendants–Appellees.**

**No. 18695.**

Court of Appeals of New Mexico.

Aug. 7, 1998.

Frank A. Baca, Rafael Padilla, Padilla Law Firm, Albuquerque, for Plaintiff–Appellant.

Paul Maestas, Wayne R. Suggett, Silva, Rieder & Maestas, P.C., Albuquerque, for Defendants–Appellees Intel Corporation and Specialty Drywall, Inc.

Gary L. Gordon, H. Brook Laskey, Miller, Stratvert & Torgerson, P .A., Albuquerque, for Defendant–Appellee Chaparral Materials, Inc.

*OPINION*

ARMIJO, Judge.

{1} John Padilla (Plaintiff) appeals the district court's order granting summary judgment in favor of Intel Corporation, Specialty Drywall, Inc., and Chaparral Materials, Inc. (Defendants). The district court gave preclusive effect to the prior findings of a workers' compensation judge (WCJ) concerning the proximate cause of Plaintiff's injuries. On appeal, Plaintiff claims that the district court erred in giving preclusive effect to the WCJ's findings because Plaintiff did not have a full and fair opportunity to litigate the issue of proximate cause in the workers' compensation proceedings. We determine that the district court did not abuse its discretion in applying the doctrine of collateral estoppel under the circumstances of this case. Therefore, we affirm the order granting Defendants' motion for summary judgment.

## I. BACKGROUND

{2} On July 16, 1993, Plaintiff was employed as a laborer by TDC General Contracting, Inc. (Employer), a subcontractor doing business at a construction site owned by Defendant Intel Corporation in Sandoval County, New Mexico. Defendants Specialty Drywall, Inc. and Chaparral Materials, Inc. are other subcontractors that were doing business at the Intel site. Plaintiff alleges that Defendants were negligent in their handling of a stack of sheetrock that fell on him and caused injuries to his left knee and lower back on July 16, 1993.

{3} Following the July 16 incident, Employer's workers' compensation insurance carrier (Employer–Insurer) paid temporary total disability benefits to Plaintiff. Employer–Insurer also paid all of Plaintiff's medical bills except for those charged by one doctor who was not an authorized health care provider. These payments totalled more than $68,000.

{4} In February 1995, Employer–Insurer stopped paying workers' compensation benefits to Plaintiff after learning that the Fraud Bureau of the Workers' Compensation Administration (WCA) was investigating a complaint by Plaintiff's ex-wife claiming that Plaintiff had intentionally pulled the sheetrock down upon himself to fake a compensable injury and defraud Employer–Insurer. When Employer–Insurer stopped paying benefits, Plaintiff filed a complaint with the WCA claiming that he was entitled to additional benefits. In July 1996, while the workers' compensation proceedings were still underway, Plaintiff also filed a complaint in district court alleging that his injuries were caused by Defendants' negligence.

{5} On August 7, 1996, the WCJ held a formal hearing regarding Plaintiff's claim for additional benefits from Employer–Insurer. At the hearing, Employer–Insurer denied that Plaintiff was entitled to workers' compensation benefits and sought the return of the $68,000 in benefits that it had previously paid to Plaintiff. Without objection, the WCJ admitted into evidence various written statements by Plaintiff's ex-wife and brother-in-law, as well as a report by the WCA's Fraud Bureau. Plaintiff's ex-wife and brother-in-law were present at the hearing, but were not called to testify by any of the parties. The only witnesses who testified at the hearing were Plaintiff, his mother, and Plaintiff's expert on accident reconstruction.

{6} Following the August 1996 hearing, the WCJ entered a compensation order containing, in relevant part, the following findings:

29. The sheetrock which fell on [Plaintiff] on July 16, 1993[,] while he was at work for [Employer] fell because [Plaintiff] pulled [it] down upon himself.

30. [Plaintiff's] ex-wife and brother-in-law both reported that [Plaintiff] told them that he intentionally pulled the sheetrock upon himself.

31. The sole cause for the sheetrock falling down upon [Plaintiff] on July 16, 1993[,] resulting in his left knee injury was [Plaintiff's] own conduct/actions in pulling the sheetrock upon himself with the intent to injure himself.

32. The injuries [Plaintiff] suffered on July 6, [1993] were willfully occasioned and/or self-inflicted by virtue of the fact that [Plaintiff] pulled the sheetrock down upon himself.

Based on its findings, the WCJ concluded that Plaintiff was not entitled to any workers' compensation benefits and was required to repay Employer–Insurer for the $68,000 in benefits that Plaintiff had received, plus costs and attorney fees. Plaintiff appealed the decision of the WCJ to this Court. This Court issued its calendar notice proposing affirmance. The WCJ's compensation order was summarily affirmed by this Court after Plaintiff did not respond to the calendar notice.

{7} After this Court issued its mandate in the workers' compensation case, Defendants filed a motion for summary judgment in the district court contending that the prior findings of the WCJ should be given preclusive effect with respect to the proximate cause of Plaintiff's injuries. The district court granted Defendants' motion, and this appeal followed.

## II. DISCUSSION

### A. *Standard of Review*

{8} "Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Roth v. Thompson,* 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). Proximate cause is a necessary, factual element of Plaintiff's negligence claims against Defendants. *See Tafoya v. Seay Bros. Corp.,* 119 N.M. 350, 352, 890 P.2d 803, 805 (1995) ("The elements of a prima facie case of negligence are duty, breach, proximate cause, and damages."); *Calkins v. Cox Estates,* 110 N.M. 59, 61, 792 P.2d 36, 38 (1990) (proximate cause is a question of fact). Thus, if the doctrine of collateral estoppel precludes Plaintiff from challenging the WCJ's finding that Plaintiff's intentional conduct was the sole cause of his injuries, then Defendants are entitled to judgment as a matter of law.

{9} The party invoking the doctrine of collateral estoppel has the burden of introducing sufficient evidence for the district court to rule on whether the doctrine is applicable. *See DeLisle v. Avallone,* 117 N.M. 602, 606, 874 P.2d 1266, 1270 (Ct.App. 1994); *cf. Shovelin v. Central N.M. Elec. Coop., Inc.,* 115 N.M. 293, 297–98, 850 P.2d 996, 1000–01 (1993) (discussing elements of prima facie case for collateral estoppel in context of prior adjudicative decision by administrative agency). However, if the party invoking the doctrine has made a prima facie case, then the burden shifts to the party opposing collateral estoppel to show that he or she was not afforded a full and fair opportunity to litigate the issue in the prior proceeding. *See DeLisle,* 117 N.M. at 606, 874 P.2d at 1270.

{10} In the present case, Plaintiff does not challenge any of the elements of collateral estoppel that make up Defendants' prima facie case. Thus, the sole issue on appeal is whether Plaintiff met his burden of showing that he was deprived of a full and fair opportunity to litigate the issue of proximate cause in the workers' compensation proceedings. *Cf. Spectron Dev. Lab. v. American Hollow Boring Co.,* 1997–NMCA–025, ¶ 32, 123 N.M. 170, 936 P.2d 852 (normal rules for preservation of error apply to appeals from summary judgments). The factors to be weighed in determining whether the workers' compensation proceeding provided Plaintiff with a full and fair opportunity to litigate include Plaintiff's incentive to litigate in the administrative forum, procedural differences between the two forums, and policy considerations. *See Rex, Inc. v. Manufactured Hous. Comm.,* 119 N.M. 500, 505, 892 P.2d 947, 952 (1995). Because "[t]he [district] court is in the best position to decide whether a party against whom estoppel is asserted has had a full and fair opportunity to litigate[,]" *Silva v. State,* 106 N.M. 472, 476, 745 P.2d 380, 384 (1987), we review the district court's ruling on this issue for an abuse of discretion. *See Shovelin,* 115 N.M. at 299, 850 P.2d at 1002.

### B. *Public Policy*

{11} We first address Plaintiff's assertion that this Court should not allow the district court to apply the doctrine of collateral estoppel to the WCJ's findings because it is contrary to public policy. To support this assertion, Plaintiff cites our recent opinion in *Eldridge v. Circle K Corp.,* 1997–NMCA–022, ¶ 26, 123 N.M. 145, 934 P.2d 1074, in which we stated a preference for the district court, rather than the WCJ, to determine first whether the worker was injured by intentional conduct of the employer. Plaintiff also cites the policy of not applying preclusion doctrines to expedited administrative proceedings if doing so would induce the parties " 'to dispute the administrative proceeding in anticipation of its effect in another proceeding,' " *Shovelin,* 115 N.M. at 301, 850 P.2d at 1004 (quoting Restatement (Second) of Judgements § 83(4) & cmt. h (1982) [hereinafter "Restatement"] ).

{12} We find both precedents distinguishable. *Eldridge,* by its own terms, was restricted to "the limited circumstances of this type of case, when the worker claims a cause of action based on deliberate, intentional injury by the employer." *Eldridge,* 1997–NMCA–022, ¶ 26, 123 N.M. 145, 934 P.2d 1074. Unlike the situation here, the worker's exclusive remedy would be in district court or from the WCJ, depending upon whether

the employer engaged in intentional misconduct. As for *Shovelin*, it was concerned about the impact on informal, expedited administrative proceedings if the parties believed that the administrative ruling would have collateral estoppel consequences in court. In that case the proceeding to determine eligibility for unemployment compensation had been conducted over the telephone by a hearing officer without a law degree, without any formal rules of evidence, and without any prior opportunity for formal discovery. *Shovelin*, 115 N.M. at 301, 850 P.2d at 1004. Our Supreme Court feared that giving such proceedings collateral estoppel effect would encourage the parties to turn those proceedings "into full blown trials," contrary to the statutory purpose of providing a prompt remedy. *Id.* Proceedings before a WCJ are quite different from those described in *Shovelin*. The WCJ must be a lawyer, NMSA 1978, § 52–5–2(C) (1990), and, as described in our discussion below of procedural differences, hearings generally resemble trials in court. Giving such proceedings collateral estoppel effect is unlikely to change the nature of the proceedings. Thus, we conclude that public policy considerations do not warrant a general prohibition on giving workers' compensation proceedings collateral estoppel effect, and we must turn to a fact-specific inquiry concerning the parties' incentive to litigate and the effect of procedural differences between the two forums. *See Silva*, 106 N.M. at 476, 745 P.2d at 384 (listing factors which court must consider in determining whether there is full and fair opportunity to litigate).

## C. *Incentive to Litigate*

{13} Plaintiff's next contention is that he lacked a comparable incentive to litigate the issue of proximate cause in the workers' compensation proceeding because of the statutory limits on the amount of benefits and attorney fees that he and his attorney may be awarded in such a proceeding. *See Shovelin*, 115 N.M. at 299–300, 850 P.2d at 1002–03 (relatively small amount in controversy in administrative proceeding weighs against application of collateral estoppel). In particular, Plaintiff points to statutory provisions which limit his recovery of lost wages

in the workers' compensation proceeding to 66 2/3% of actual wages, *see* NMSA 1978, § 52–1–41(A) (1993), and which generally limit attorney fees in such proceedings to $12,500, *see* NMSA 1978, § 52–1–54(I) (1993).

{14} In response to this contention, Defendants suggest that proceeding in the administrative forum gave Plaintiff some advantages which offset these limitations. For example, workers' compensation benefits cannot be reduced under the doctrine of comparative negligence, *see* NMSA 1978, § 52–1–8 (1989); *Gough v. Famariss Oil & Refining Co.*, 83 N.M. 710, 714, 496 P.2d 1106, 1110 (Ct.App.1972), and generally are not subject to income taxation, *see* 26 U.S.C. § 104(a)(1) (1994); *Wallace v. United States*, 139 F.3d 1165, 1167 (7th Cir.1998), or claims by creditors, *see* NMSA 1978, § 52–1–52 (1989). In addition, the limit on attorney fees in workers' compensation proceedings applies to attorneys for both sides, *see* § 52–1–54(I), and is accompanied by a provision which requires employers to advance up to $1,000 for a worker's discovery costs, *see* § 52–1–54(D).

{15} Under the circumstances of the present case, we conclude that the district court did not abuse its discretion in weighing Plaintiff's incentive to litigate in the administrative forum. In addition to Plaintiff's claim for more benefits, the amount in controversy in the workers' compensation proceeding included Employer–Insurer's counterclaim for the return of over $68,000 in benefits it had already paid, plus costs and attorney fees. Further, the amount ultimately recovered by Plaintiff in the action he was concurrently pursuing in the district court could have been significantly reduced if Employer–Insurer had sought reimbursement in that forum under NMSA 1978, Section 52–5–17 (1990). *See generally St. Joseph Healthcare System v. The Travelers Cos.*, 119 N.M. 603, 605–06, 893 P.2d 1007, 1009–10 (Ct.App.1995) (interpreting Section 52–5–17 as recognizing workers' compensation carrier's right of reimbursement against worker who recovers from third party).

{16} Finally, Plaintiff cannot claim that a lack of notice of possible collateral estoppel significantly diminished his incentive to liti-

gate the issue of proximate cause in the workers' compensation proceeding. *Cf. Shovelin*, 115 N.M. at 300, 850 P.2d at 1003 (when application of collateral estoppel to unemployment compensation proceedings was an issue of first impression, party seeking unemployment compensation benefits had no way of knowing that adverse ruling could be used to preclude breach-of-contract claims). There is a large body of case law applying preclusion doctrines to workers' compensation proceedings in other jurisdictions, *see* 8 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 79.72(d) (1998), and this Court has previously addressed the issue, *see Sanchez v. San Juan Concrete Co.*, 1997–NMCA–068, ¶ 10 n.1, 123 N.M. 537, 943 P.2d 571 (noting that an employer's argument in district court might be precluded by prior ruling in workers' compensation proceeding); *Johnson v. Aztec Well Servicing Co.*, 117 N.M. 697, 699–700, 875 P.2d 1128, 1130–31 (Ct.App.1994) (concluding that prior ruling in workers' compensation proceeding did not satisfy all elements of res judicata or collateral estoppel under particular facts presented).

### D. *Procedural Differences*

{17} To further support his assertion that he was deprived of a full and fair opportunity to litigate the proximate-cause issue in the workers' compensation proceeding, Plaintiff attempts to point out various procedural differences between district court proceedings and administrative proceedings before the WCA. We recognize that "[p]reclusion may be withheld when the party against whom it is invoked can avail himself of procedures in the second action that were not available to him in the first action and that may have been significantly influential in determination of the issue." Restatement, *supra*, § 29 cmt. d; *see also Silva*, 106 N.M. at 475, 745 P.2d at 383. In the present case, however, it was not an abuse of discretion to conclude that the determination of the proximate cause issue was not significantly influenced by any differences in the rules of evidence and procedure concerning discovery, cross-examination of witnesses, or the right to a jury trial.

### 1. *Discovery*

{18} We first address Plaintiff's contention that his opportunity for full and complete discovery was more limited under the WCA's discovery rules than under the New Mexico Rules of Civil Procedure. *Compare* Rules 1–026 to –037 NMRA 1998 (discovery rules for civil actions in district court) *with* NMSA 1978, § 52–5–7(F) (1993) (WCA discovery procedure); 11 NMAC 4.4.12 (May 26, 1987, as amended through June 1, 1996) (rules governing WCA adjudication process). Plaintiff contends that the WCA discovery procedure is more limited because Section 52–5–7(F) requires parties to obtain the WCJ's approval before proceeding with their discovery requests, and in this case Employer objected to answering some of Plaintiff's interrogatories in the workers' compensation proceeding.

{19} In response to this contention, we note that the WCA rules provide for a mandatory exchange of certain types of evidence, *see* 11 NMAC 4.4.12.4, as well as various mechanisms for compelling adequate responses to discovery requests, *see* 11 NMAC 4.4.12.4.2 (sanctions for failure to comply with mandatory discovery); 11 NMAC 4.4.12.5.2 (pre-trial hearing on disputed discovery issues). In addition, several of the WCA rules expressly incorporate discovery rules that apply in the district courts. *See, e.g.*, 11 NMAC 4.4.12.7.2 (depositions shall be taken pursuant to Rule 1–030); 11 NMAC 4.4.12.8.1 (Rules 1–033, 1–034, and 1–036 apply to interrogatories, requests for production, and requests for admission authorized by WCJ). In this case, Plaintiff had ample time to conduct discovery beyond the mandatory minimum expressed in the WCA rules, and the record does not show that he filed any motions with the WCJ to compel further discovery of matters pertaining to causation. Hence, we fail to see how the determination of the proximate-cause issue was significantly influenced by any difference between the district court's discovery rules and those of the WCA. *See* Restatement, *supra*, § 29 cmt. d; *In re Ernesto M., Jr.*, 1996–NMCA–039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice.").

### 2. *Cross–Examination*

{20} Plaintiff's next contention is that his ability to cross-examine certain adverse witnesses was hampered by the WCA rules concerning the use of deposition testimony at trial and the admissibility of other written statements. Under the WCA rules, written medical evidence such as deposition transcripts of health-care providers generally is admissible in workers' compensation hearings. *See* 11 NMAC 4.4.12.7.4. Indeed, the WCA rules generally do not provide for the introduction of medical evidence through live testimony. *See* 11 NMAC 4.4.12.6.

{21} However, the adverse witnesses whom Plaintiff allegedly lacked the opportunity to cross-examine in the present case were not authorized health-care providers and did not provide medical evidence. With respect to witnesses other than authorized health-care providers, the WCA rules incorporate many of the same rules of procedure and evidence that apply in the district courts. *See, e.g.,* 11 NMAC 4.4.12.7.5 (except for testimony of authorized health-care providers, Rule 1–032 applies to use of depositions); 11 NMAC 4.4.12.15.1 (all district court rules of evidence and procedure apply unless specifically excluded elsewhere in WCA rules). Plaintiff has failed to demonstrate how or why the WCA Rules would have prevented Plaintiff from successfully objecting to out-of-court statements made by these witnesses if they were inadmissible under the rules of evidence that apply in the district courts. Further, since the WCJ's pretrial order reserved Plaintiff's right to call Employer–Insurer's witnesses, and the record indicates that Plaintiff's ex-wife and brother-in-law were present at the hearing as potential witnesses for Employer–Insurer, it does not appear that Plaintiff was in fact deprived of the opportunity to examine these witnesses regarding their prior statements. Thus, we fail to see how the determination of the proximate-cause issue was significantly influenced by any procedural differences concerning the admissibility of evidence or opportunity for cross-examination in the workers' compensation proceeding. *See* Restatement, *supra,* § 29 cmt. d; *In re Ernesto M., Jr.,* 1997–NMCA–039, ¶ 10, 121 N.M. 562, 915 P.2d 318.

### 3. *Right to Jury Trial*

{22} Finally, we address Plaintiff's assertion that collateral estoppel does not apply because he had no right to a jury trial in the workers' compensation proceeding. Although the presence or absence of a jury is not "altogether immaterial," *Silva,* 106 N.M. at 476, 745 P.2d at 384; *see also Shovelin,* 115 N.M. at 299, 850 P.2d at 1002, New Mexico courts have applied the doctrine of collateral estoppel in cases where there was no right to a jury in the prior proceeding. *See, e.g., Rex, Inc.,* 119 N.M. at 505, 892 P.2d at 952 (private arbitration proceeding); *In re Forfeiture of Fourteen Thousand Six Hundred Thirty Nine Dollars,* 120 N.M. 408, 414–15, 902 P.2d 563, 569–70 (Ct.App.1995) (suppression hearing in criminal matter). Considering the right to a jury trial in combination with the other factors discussed above, we fail to see how the determination of the proximate-cause issue was significantly influenced by the lack of a jury to serve as the fact finder in the workers' compensation proceeding. *See* Restatement, *supra,* § 29 cmt. d; *In re Ernesto M., Jr.,* 1997–NMCA–039, ¶ 10, 121 N.M. 562, 915 P.2d 318.

{23} Collateral estoppel only requires that the procedures available in the administrative forum be "substantially similar" to the procedures available in the district court; it does not require them to be identical. *Shovelin,* 115 N.M. at 298, 850 P.2d at 1001 (quoting *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 825–26, 467 N.E.2d 487, 489–90 (1984)); *see also Rex, Inc.,* 119 N.M. at 505, 892 P.2d at 952 (quoting Restatement, *supra,* § 84 cmt. c). Under the circumstances of this case, it was not an abuse of discretion to conclude that the procedures available to Plaintiff in the workers' compensation proceeding met this requirement. The fact that Plaintiff did not take full advantage of these procedures by moving to compel additional discovery responses or objecting to inadmissible evidence is not a sufficient basis for reversing the district court's decision. "[A] refusal to give the first judgment preclusive effect should not occur

without a compelling showing of unfairness, nor should it be based simply on a conclusion that the first determination was patently erroneous." Restatement, *supra*, § 28 cmt. j.

## III. CONCLUSION

{24} For the foregoing reasons, the district court did not abuse its discretion in applying the doctrine of collateral estoppel to the findings of the WCJ under the facts of this case. Therefore, we affirm the district court's order granting Defendants' motion for summary judgment.

{25} **IT IS SO ORDERED.**

HARTZ, C.J., and PICKARD, J., concur.