Certiorari Granted, December 4, 2013, No. 34,387

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMCA-011

Filing Date: September 30, 2013

Docket No. 31,605

JOHN CONTRERAS,

Plaintiff-Appellant,

v.

MILLER BONDED, INC.,

Defendant-Appellee.

consolidated with

Docket No. 32,050

CYNTHIA PEREA,

Plaintiff-Appellant,

v.

THE CITY OF ALBUQUERQUE,

Defendant-Appellee,

THE NEW MEXICO TRANSPORTATION
UNION,

Defendant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Valerie A. Huling, District Judge
Theresa Baca, District Judge

The Gilpin Law Firm

Donald Gilpin
Albuquerque, NM

for Appellants

Maestas & Suggett, P.C.
Paul Maestas
Albuquerque, NM

for Appellee Miller Bonded, Inc.

French & Associates, P.C.
Paula I. Forney
Stephen G. French
Robert W. Becker
Albuquerque, NM

for Appellee City of Albuquerque

**OPINION**

**VIGIL, Judge.**

{1}     In each of the cases before us in this appeal, Plaintiffs brought a suit under the New Mexico Human Rights Act (NMHRA), NMSA 1978, Sections 28-1-1 to -14 (1969, as amended through 2007), which provides for a "trial de novo in the district court." Prior to each lawsuit, administrative proceedings unrelated to the NMHRA actions resulted in adjudications of fact against each NMHRA plaintiff that were fatal to both NMHRA suits. The NMHRA defendants successfully argued to the district court that collateral estoppel applied, and summary judgment was granted in their favor. Each NMHRA plaintiff appeals, and we have consolidated the appeals. For the reasons set forth below, we conclude that by specifically providing for a "trial de novo in the district court" in NMHRA actions, the Legislature created a statutory exception to the application of collateral estoppel in such cases. We therefore reverse.

**I.     BACKGROUND**

**A.     *Perea v. City of Albuquerque***

{2}     Cynthia Perea was a bus driver for the City of Albuquerque who was terminated for cause. Following administrative proceedings, which included a full evidentiary hearing before the City Personnel Board, Perea appealed her termination to the district court, as provided by the Albuquerque city ordinance. In the district court, Perea asserted that her termination resulted from sexual discrimination. In support of this assertion, Perea

2

contended that a male employee had also engaged in misconduct but only received a demotion. She also asserted that she was terminated because of a serious medical condition resulting from injuries she sustained prior to the incident giving rise to her termination.

**{3}** After engaging in traditional whole record review of the administrative record, the district court concluded that there was substantial evidence in the record to support Perea's termination for cause. The district court also rejected Perea's discrimination arguments on the basis that the male employee's behavior she cited was completely distinguishable from her own conduct. The district court further found that "[b]ecause the [City Personnel Board] expressly found [Perea's] testimony to be not credible, and because [Perea] merely provided her version of hearsay evidence (without further proof), the [City Personnel Board] is justified in concluding that [Perea] was not discriminated against."

**{4}** Following the district court action affirming her termination, Perea filed a charge of discrimination with the Human Rights Division of the New Mexico Department of Labor pursuant to the NMHRA contending that her termination resulted from sexual discrimination, serious medical condition, and retaliation. After investigating the complaint, the Director of the Human Rights Division made a determination that there was sufficient probable cause to believe that discrimination occurred in Perea's termination on the basis of sex, but no probable cause that there was discrimination on the basis of serious medical condition or retaliation. Perea was advised of her right to a hearing before the Human Rights Division or to waive the hearing and proceed directly to district court. *See* NMSA 1978, § 28-1-10(J) (providing that a complainant "may seek a trial de novo in the district court in lieu of a hearing before the commission" after filing a waiver of the right to a hearing before the commission). Perea chose to waive the hearing. She requested and received a "right to sue" letter from the Human Rights Division, and she filed a complaint in the district court alleging that her termination resulted from discrimination on the basis of sex and serious medical condition in violation of the NMHRA.

**{5}** The City filed a motion for summary judgment, contending that "[t]he only issue presented in this case is discrimination [on] the basis of gender and serious medical condition" and that "Perea is collaterally estopped from challenging the findings of [the district court] that neither pretext nor disparate treatment played a role in her termination." In response, Perea argued that her discrimination claims were not precluded by collateral estoppel because she is entitled to a trial de novo pursuant to Section 28-1-13(A) of the NMHRA and relevant federal case law. The district court agreed with the City and granted summary judgment in its favor. Perea appeals.

**B.** *Contreras v. Miller Bonded, Inc.*

**{6}** John Contreras was employed by Miller Bonded, Inc. (MBI), as a sheetmetal apprentice when he suffered a work injury to his back. When Contreras did not show up for work the next day, he was terminated for cause.

3

**{7}** After receiving treatment for his injuries, Contreras filed a pro se complaint for workers' compensation benefits. At issue before the workers' compensation judge (WCJ) was whether Contrereas gave notice of the accident and injury to MBI before or after he was terminated. The WCJ awarded compensation benefits to Contreras. However, the WCJ also expressly found that Contreras was terminated from his employment for cause and that he gave notice to MBI of the accidental injury after he was terminated. Contreras appealed the compensation order to this Court, challenging the sufficiency of the evidence. We summarily affirmed when he failed to provide us with the information necessary to evaluate his appeal.

**{8}** Like Perea, Contreras then filed a charge of discrimination with the Human Rights Division of the New Mexico Department of Labor pursuant to the NMHRA, alleging that his termination resulted from discrimination on the basis of a serious medical condition. After investigating the complaint, the Director of the Human Rights Division found that Contreras had not disclosed his injury to MBI until after he was terminated and that his injury did not rise to the level of a serious medical condition. The Director therefore determined that there was no probable cause to believe that Contreras's termination resulted from discrimination on the basis of a serious medical condition, and his charge was dismissed with prejudice.

**{9}** The NMHRA affords "[a] person aggrieved by an order of the commission" a right to "obtain a trial de novo in the district court." Section 28-1-13(A). Contreras filed a complaint in the district court pursuant to the NMHRA, contending that MBI terminated him because of discrimination on the basis of a serious medical condition. Contreras also brought a separate retaliatory discharge tort claim, alleging that "[his] employment was terminated because of his serious medical condition" after he "made an employment decision for the safety, welfare and best interests of his coworkers, consumers and [MBI]."

**{10}** MBI filed a motion for summary judgment, arguing that the findings of the WCJ precluded Contreras from re-litigating his claims before the district court under the doctrine of collateral estoppel. Specifically, MBI asserted that Contreras was not entitled to litigate again the findings of the WCJ that Contreras was terminated for cause and that he had not given notice of his injury to his employer until after his employment was terminated. Contreras responded by asserting that collateral estoppel did not apply and that in any event, under Section 28-1-13(A), he was entitled to a trial de novo.

**{11}** The district court determined that substantial evidence supported the findings of the WCJ that Contreras was terminated for cause and that he notified MBI of his accident and injury after he was terminated. The district court further noted that there was no question that both of these questions were fully litigated in the workers' compensation case and concluded that Contreras "does not have the right to litigate for a second time the factual issues necessary to determine both his workers' compensation claim and his current claims before this Court." Summary judgment was entered in favor of MBI on all of Contreras's claims.

4

**{12}** Contreras filed a motion to reconsider, arguing that the language of Section 28-1-13(A) providing for a trial de novo and comparative federal case law establish that the Legislature did not intend for prior administrative findings to preclude a trial de novo on his NMHRA claims. The district court denied the motion, and Contreras appeals.

## II.    ANALYSIS

**{13}** On appeal, Plaintiffs raise an issue of first impression in New Mexico. Specifically, Plaintiffs assert that summary judgment was improperly granted on their respective NMHRA claims because by directing that a NMHRA plaintiff is entitled to bring an action in the district court "de novo," the Legislature expressed its intent that prior findings made by an administrative agency are not entitled to collateral estoppel in a subsequent NMHRA action. To resolve the issue before us, we first examine the doctrine of collateral estoppel and conclude that the elements of collateral estoppel are satisfied in both NMHRA cases. We then examine the statutory language adopted by the Legislature in creating NMHRA actions and federal precedent. After doing so, we conclude that findings made in administrative proceedings are not entitled to collateral estoppel in NMHRA actions.

### A.    Collateral Estoppel

**{14}** "The doctrine of collateral estoppel fosters judicial economy by preventing the relitigation of ultimate facts or issues actually and necessarily decided in a prior suit." *Shovelin v. Cent. N.M. Elec. Coop.*, 1993-NMSC-015, ¶ 10, 115 N.M. 293, 850 P.2d 996 (internal quotation marks and citation omitted). "[A]dministrative adjudicative determinations may be given preclusive effect if rendered under conditions in which the parties have the opportunity to fully and fairly litigate the issue at the administrative hearing." *Id.* ¶ 12.

**{15}** "The party invoking the doctrine of collateral estoppel has the burden of introducing sufficient evidence for the district court to rule on whether the doctrine is applicable." *Padilla v. Intel Corp.*, 1998-NMCA-125, ¶ 9, 125 N.M. 698, 964 P.2d 862. "[T]he moving party must demonstrate that (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation." *Shovelin*, 1993-NMSC-015, ¶ 10. "[I]f the party invoking the doctrine has made a prima facie case, then the burden shifts to the party opposing collateral estoppel to show that he or she was not afforded a full and fair opportunity to litigate the issue in the prior proceeding." *Padilla*, 1998-NMCA-125, ¶ 9. In determining whether a party had a full and fair opportunity to litigate, a court should consider the opposing party's incentive to litigate in the administrative forum, any procedural differences between the two forums, and any relevant policy considerations. *Id.* ¶ 10.

**{16}** We review a decision by the district court to apply the doctrine of collateral estoppel

for an abuse of discretion. *See id.* ("Because the district court is in the best position to decide whether a party against whom estoppel is asserted has had a full and fair opportunity to litigate, we review the district court's ruling on this issue for an abuse of discretion." (alterations, internal quotation marks, and citation omitted)); *Shovelin*, 1993-NMSC-015, ¶ 10 (stating that application of collateral estoppel "is within the competence of the trial court, and we review the trial court's determination for an abuse of discretion").

**{17}** Turning to the elements of collateral estoppel, the record demonstrated that Plaintiffs were parties in the prior administrative proceedings, and the claims in those proceedings were different from the NMHRA causes of action. Further, a central disputed issue of fact before the City Personnel Board in Perea's administrative hearing was whether her termination was a result of discrimination on the basis of her sex and medical condition, and this question was fully and vigorously contested. Similarly, a central disputed issue of fact before the WCJ in Contreras's workers' compensation case was whether he informed MBI of his accident and injuries before or after MBI terminated him, and this question was also fully and vigorously contested. We therefore conclude that the district court in each case before us did not abuse its discretion in concluding that the elements of collateral estoppel were satisfied. *See Padilla*, 1998-NMCA-125, ¶ 24 (concluding that the district court did not abuse its discretion in applying the collateral estoppel doctrine to the findings of a workers' compensation judge in a subsequent negligence action); *Mascarenas v. City of Albuquerque*, 2012-NMCA-031, ¶ 37, 274 P.3d 781 (holding that the district court did not err in concluding that findings of the city personnel board resulting in termination of an employee precluded litigating the employee's due process and Family Leave Act (FMLA) claims).

## B. Trial de Novo Statutory Language of NMHRA

**{18}** Plaintiffs' central argument focuses on the statutory language of the NMHRA providing for a trial de novo in the district court and on the background of the NMHRA. Interpretation of a statute is a question of law which we review de novo. *See Morgan Keegan Mortg. Co. v. Candelaria*, 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P.2d 1066. "In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 13, 121 N.M. 764, 918 P.2d 350.

**{19}** Under the NMHRA, "[a] person claiming to be aggrieved by an unlawful discriminatory practice . . . may file with the human rights division of the labor department a written complaint." Section 28-1-10(A). "If the director determines that probable cause exists for the complaint, the director shall attempt to achieve a satisfactory adjustment of the complaint through persuasion and conciliation." Section 28-1-10(C). If conciliation fails, "the commission shall issue a written complaint in its own name against the respondent" and the respondent is required "to answer the allegations of the complaint at a hearing before the commission or hearing officer." Section 28-1-10(F). However, the complainant has the option to file a waiver of his or her right to a hearing before the commission, and request a "trial de novo" in the district court "pursuant to Section 28-1-13." Section 28-1-10(J). This

is the statutory scheme applicable in Perea's case. On the other hand, "[i]f the director determines that the complaint lacks probable cause, the director shall dismiss the complaint and notify the complainant and respondent of the dismissal." Section 28-1-10(B). "A person aggrieved by an order of the commission may obtain a trial de novo in the district court." Section 28-1-13(A). This is the statutory scheme applicable to Contreras.

**{20}** In both cases before us, the NMHRA directs that "a trial de novo in the district court" shall take place where "either party may request a jury." Section 28-1-13(A), (C). Furthermore, the NMHRA provides, "The jurisdiction of the district court is exclusive and its judgment is final, subject to further appeal to the court of appeals." *Id.*

**{21}** In *Keller v. City of Albuquerque*, our Supreme Court concluded that district court review of NMHRA actions differs from the traditional review given to other administrative agency decisions. 1973-NMSC-048, 85 N.M. 134, 509 P.2d 1329, *overruled on other grounds by Green v. Kase*, 1992-NMSC-004, 113 N.M. 76, 823 P.2d 318. The general rule is that "on appeals from administrative bodies the questions to be answered by the court are questions of law and are actually restricted to whether the administrative body acted fraudulently, arbitrarily or capriciously, whether the order was supported by substantial evidence, and, generally, whether the action of the administrative head was within the scope of his authority." *Id.* ¶ 4 (internal quotation marks and citation omitted). However, the Supreme Court noted, the NMHRA contains "peculiar language relating to appeals from decisions of the Commission not present in other laws relating to appeals from administrative agencies" including the right to a jury trial and the trial de novo language at issue here. *Id.* ¶ 7. As a result of this language, our Supreme Court concluded that the NMHRA "requires an independent review of the facts" by the district court, which shall "decide all questions of fact independently of any previous determination made by the Commission." *Id.* ¶ 13.

**{22}** Our Supreme Court subsequently reinforced its holding in *Green* by rejecting an interpretation of *Keller*, which required the jury or district judge sitting as the finder of fact to listen to the entire taped transcript of the commission hearing (which is filed with the district court as required by Section 28-1-13(B)) before admitting any other additional relevant evidence. *Green*, 1992-NMSC-004, ¶ 2. The Supreme Court stated, "we fail to perceive any limitation on the scope of the trial to the record from the proceedings below" and that "the [L]egislature intended to grant the aggrieved party a full evidentiary hearing[.]" *Id.* ¶ 6. Further, the Supreme Court concluded, "[t]o hold that the [L]egislature intended anything less than a full evidentiary hearing—a trial anew—would read unwarranted limitations into the otherwise clear command of Section 28-1-13." *Green*, 1992-NMSC-004, ¶ 8.

**{23}** *Keller* and *Green* clearly mandate that decisions made by the Commission have absolutely no binding effect on subsequent de novo actions filed in the district court pursuant to the NMHRA. However, the issue of whether a NMHRA claim may be brought to the district court free of the findings made by an administrative agency other than the

7

Commission has not been decided in New Mexico. We therefore look to Title VII of the federal Civil Rights Act and its interpretative federal case law for guidance. *See Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 23, 135 N.M. 539, 91 P.3d 58 ("[W]hen considering claims under the NMHRA, we may look at federal civil rights adjudication for guidance in interpreting the NMHRA.").

**C.      Federal Precedent**

**{24}**     The Civil Rights Act of 1964, 42 U.S.C. §§ 2000a-h (2009), is a comprehensive piece of legislation "designed primarily to protect and provide more effective means to enforce the civil rights of persons within the jurisdiction of the United States." H.R. Rep. No. 88-914, at 16 (1964), *reprinted in* 1964 U.S.C.C.A.N. 2391, 2391. The Act seeks to eliminate discrimination in a broad number of areas, including voting rights and registration, public accommodations, public facilities, public education, federally assisted programs, and employment opportunities. *See id.* Title VII of the Civil Rights Act was enacted "to eliminate, through the utilization of formal and informal remedial procedures, discrimination in employment based on race, color, religion, or national origin" through the establishment of a Federal Equal Employment Opportunity Commission (EEOC). H.R. Rep. No. 88-914, at 26; 1964 U.S.C.C.A.N., at 2401. Federal law was subsequently expanded to include protections against discrimination on the basis of sex and disability. *See generally* 42 U.S.C. § 2000e-2(a)(1) (stating that unlawful employment practices consists of discriminatory actions on the basis of "such individual's race, color, religion, sex, or national origin"); 42 U.S.C. § 12101(b)(1) (2008) ("It is the purpose of this chapter to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]").

**{25}**     The EEOC investigates alleged discriminatory practices by employers. If the EEOC determines that "there is reasonable cause to believe the respondent has engaged in, or is engaging in, an unlawful employment practice," the Commission shall "bring a civil action to prevent the respondent from engaging in such unlawful employment practice[.]" Title VII, § 707(b). If the EEOC does not bring the civil action within the required ninety days, "the person claiming to be aggrieved may . . . bring a civil action to obtain relief." Title VII, § 707(c).

**{26}**     The statutory right to "bring a civil action" has been widely construed as allowing either the EEOC or the complainant to bring a trial de novo in federal district court following the EEOC's investigation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 799 (1973) (noting that "court actions under Title VII are de novo proceedings"); *Georator Corp. v. Equal Emp't Opportunity Comm'n*, 592 F.2d 765, 767 (4th Cir. 1979) ("Title VII details the procedures for civil action in an employment discrimination case, but does not provide for preliminary review of the Commission's determination of reasonable cause. Even when suit is brought later by either the EEOC or the charging party, the trial is [d]e novo, and the court will not determine whether substantial evidence supported the Commission's preadjudication finding of reasonable cause."); *Cottrell v. Newspaper Agency Corp.*, 590

F.2d 836, 838 (10th Cir. 1979) ("Federal Title VII suits are [d]e novo actions[.]"); *Robinson v. Lorillard Corp.*, 444 F.2d 791, 800 (4th Cir. 1971) (noting that "court actions under Title VII are de novo proceedings"). Thus, "it is settled that decisions by the EEOC do not preclude a trial de novo in federal court." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 470 n.7 (1982). The United States Supreme Court has also recognized the right to a de novo trial under Title VII even when an administrative finding was made by an agency other than the EEOC.

**{27}**     In *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), the United States Supreme Court considered "under what circumstances, if any, an employee's statutory right to a trial de novo under Title VII may be foreclosed by prior submission of his claim to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." *Id*. at 38. The Court held that a federal district court must consider the employee's Title VII claims de novo, notwithstanding the result of the prior arbitration proceedings. *Id*. at 60.

**{28}**     In *Alexander*, the employee was discharged, and he filed a grievance under the collective bargaining agreement in force between his employer and union. *Id*. at 39. The dispute remained unresolved, and when it was remitted to compulsory arbitration pursuant to the grievance procedure, the employee alleged that his termination resulted from racial discrimination. *Id*. at 42. Prior to the arbitration hearing, the employee filed a charge of racial discrimination with the Colorado Civil Rights Commission, which in turn referred the complaint to the EEOC. *Id*. Following the arbitration hearing, the arbitrator ruled that the employee was discharged for cause, without referring to the employee's claim of racial discrimination. *Id*. at 42-43. The EEOC then determined that there was no reasonable cause to believe that a Title VII violation occurred, and notified the employee of his right to bring a Title VII civil action in the federal district court. *Id*. at 43. The employee filed his Title VII complaint, and the district court granted summary judgment against the employee on the basis that the claim of racial discrimination had been submitted to the arbitrator and resolved against him. *Id*. The United States Court of Appeals for the Tenth Circuit affirmed, and the United States Supreme Court reversed. *Id*.

**{29}**     The Supreme Court concluded that because the EEOC has no direct power to enforce Title VII, and the responsibility to do so is vested with federal courts, the statutory provisions "make plain that federal courts have been assigned plenary powers to secure compliance with Title VII." *Id*. at 44-45. Further, the Supreme Court observed, "[t]here is no suggestion in the statutory scheme that a prior arbitral decision either forecloses an individual's right to sue or divests federal courts of jurisdiction." *Id*. at 47. The Supreme Court also noted that the contractual right under a collective bargaining agreement prohibiting racial discrimination is separate from the statutory right under Title VII, and concluded that the "distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence." *Id*. at 50. Neither right displaces the other, the Supreme Court reasoned, because "[b]oth rights have legally independent origins and are equally available to the aggrieved employee." *Id*. at 52. For the foregoing reasons, the Supreme Court rejected applying the doctrines of

9

election of remedies and waiver to bar the employee's Title VII suit. *Id*. at 50-51. Specific to the issue before us in this case, the Supreme Court stated, "The policy reasons for rejecting the doctrines of election of remedies and waiver in the context of Title VII are equally applicable to the doctrines of res judicata and collateral estoppel." *Id*. at 51 n.10.

**{30}** In *Chandler v. Roudebush*, 425 U.S. 840, 844-45 (1976), the United States Supreme Court was presented with the question of whether a federal employee who has exhausted administrative remedies to address her claims of sexual and racial discrimination in her employment also enjoys the same right as a private employee. The Court noted it was "well established" that private sector employees have a right to bring a Title VII claim de novo in federal court. *Id.* at 844. After thoroughly examining the legislative history of Title VII, the Supreme Court concluded that Congress also intended a federal employee to be entitled to a trial de novo in federal district court. *Id*. at 852. The Supreme Court stated that "the two [Congressional] committees clearly chose to permit de novo judicial trial of such complaints rather than mere judicial review of employing agency determinations." *Id*. Further,"[t]he employee's statutory right to a trial [d]e novo under Title VII (of the Civil Rights Act of 1964) embodies a congressional decision to vest federal courts with plenary powers to enforce the (substantive) requirements (of Title VII)." *Id.* at 845 (alterations, internal quotation marks, and citations omitted).

## D. Collateral Estoppel Does Not Apply to NMHRA Actions

**{31}** Five years after the federal Civil Rights Act of 1964 was enacted, the New Mexico Legislature passed the NMHRA, which parallels the procedures provided for under the Civil Rights Act. However, unlike the federal Civil Rights Act, the NMHRA specifically provides for "trial de novo in the district court" following Commission review of discrimination claims. Sections 28-1-13(A) and -10(J). This is in sharp contrast to the federal legislation which simply states that a "civil action" may be filed in the federal district court. *See* 42 U.S.C. § 2000e-5(f). Our Legislature's intent has been clearly and succinctly expressed: one who has filed a claim of discrimination with the Commission is entitled to have his or her claims heard and considered de novo in district court, free from any administrative findings made by the Commission. We see no reason why findings made by an administrative agency not charged with addressing complaints of discrimination should be treated any differently from findings made by the Commission, which is specifically charged with investigating complaints of discrimination. Moreover, neither the City nor MBI point us to any applicable authorities holding otherwise.

**{32}** The phrase "trial de novo" means "[a] new trial on the entire case—that is, on both questions of fact and issues of law—conducted as if there had been no trial in the first instance." *Black's Law Dictionary* 1645 (9th ed. 2009). This accords with its well-settled meaning in New Mexico jurisprudence. *See In re Application of Carlsbad Irrigation Dist.*, 1974-NMSC-082, ¶ 6, 87 N.M. 149, 530 P.2d 943 (construing trial de novo in district court on appeal from decision of the state engineer to mean a trial anew in which the district court makes its own findings and enters its own judgment); *Pointer v. Lewis*, 1919-NMSC-020,

10

¶ 3, 25 N.M. 260, 181 P. 428 (stating that when a case is tried de novo in the district court, "judgment may be rendered in it as if such case had originated in the district court"); *State v. Coates*, 1913-NMSC-082, ¶ 5, 18 N.M. 314, 137 P. 597 (stating that when a case is tried de novo on appeal to the district court, the district court is required to enter its own independent judgment); *Lewis v. Baca*, 1889-NMSC-024, ¶ 6, 5 N.M. 289, 21 P. 343 ("A trial de novo, as we take it, means a trial anew in the appellate tribunal[.]"); *State v. Hoffman*, 1992-NMCA-098, ¶ 4, 114 N.M. 445, 839 P.2d 1333 ("When a case is heard de novo, it is as if no trial had been held in the matter below."); *City of Farmington v. Sandoval*, 1977-NMCA-022, ¶ 16, 90 N.M. 246, 561 P.2d 945 (stating that in a de novo trial in the district court, the district court trial is "as if no trial had been held"). By concluding that the language of the NMHRA precludes application of collateral estoppel in the cases before us, we simply give recognition to, and apply, the language used by the Legislature.

**{33}** New Mexico does not necessarily follow federal precedent in every instance. *See Ocana*, 2004-NMSC-018, ¶ 23 ("Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own." (internal quotation marks and citation omitted)). However, we find the reasoning in *Alexander* and *Chandler* recognizing a trial de novo to be highly persuasive. Like Title VII, the NMHRA gives no enforcement authority to the Commission. Enforcement of the NMHRA occurs in every instance as a result of an action filed in the district court, and in the cases before us, such an action is "de novo." Giving collateral estoppel effect to any agency determination would thwart the Legislature's determination to give plenary powers to the courts to secure compliance with the NMHRA. Importantly, the Legislature was explicit in stating that in actions to secure compliance with the NMHRA, "[t]he jurisdiction of the district court is exclusive." Section 28-1-13(C). Moreover, even if the same facts give rise to different remedies, this is not a sufficient basis for ignoring that the Legislature has provided for the right to bring a NMHRA claim "de novo." And, as recognized in *Chandler*, the statutory right to bring a NMHRA claim "de novo" encompasses more than merely reviewing the administrative determinations made by the employee agency.

**{34}** Defendants ask us to consider *University of Tennessee v. Elliott*, 478 U.S. 788 (1986) as a basis for distinguishing *Alexander* and *Chandler*. In *Elliott*, a state university employee received notice that he would be discharged. *Id*. at 790. The employee requested an administrative hearing to contest the proposed discharge, and he also filed a Title VII and 42 U.S.C. § 1983 suit in federal court, contending that his proposed discharge was racially motivated. *Elliott*, 478 U.S. at 788. The administrative proceedings resulted in a finding that the employee's discharge was not racially motivated, and the employee did not seek judicial review of the administrative decision in state court. *Id*. at 791-92. The district court in the federal case then granted summary judgment on the employee's federal claims, on grounds that the employee was precluded from relitigating the basis of the employer's actions. *Id*. at 792. *Elliott* addressed the applicability of 28 U.S.C. § 1738 (1948), which governs the preclusive effect to be given judgments and records of state courts by federal courts. *Elliott*, 478 U.S. at 794. The *Elliott* Court engaged in separate analyses of the Section

11

1983 and the Title VII Claims. Analyzing the Title VII claim, the Court stated, "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." *Id.* at 796. In this case, the City and MBI assert that because both the Perea and Contreras administrative proceedings were subject to judicial review, we should apply the foregoing statement and affirm. We disagree. In context, the statement in *Elliott* simply means that because no state court decision is involved, an unreviewed administrative decision is not subject to Section 1738. Moreover, we find it highly relevant that the *Elliott* Court reaffirmed its reasoning and conclusions in *Chandler*. *Ellliott*, 478 U.S. at 795-96. Finally, we believe that a deferential judicial review of the administrative findings of a court without jurisdiction over NMHRA claims is insufficient to meet the implied intent of the Legislature, which provides for de novo review of such claims.

{35}    MBI also refers us to language from the Section 1983 claim analysis in *Elliott*, which requires a federal court to give preclusive effect to the findings of an agency that is acting in a judicial capacity. *See id.* at 799 ("Accordingly, we hold that when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." (alterations, internal quotation marks, and citation omitted)). But Section 1983, unlike Title VII, contains no language from Congress indicating an intent to limit the application of traditional doctrines of preclusion. *See id.* at 795-97. The *Elliott* Court noted specifically that "Congress of course may decide, as it did in enacting Title VII, that other values outweigh the policy of according finality to state administrative factfinding." *Id.* at 799 n.7. Thus, the language from *Elliott* that MBI asks us to consider is simply inapplicable here.

{36}    Generally, application of the common law doctrine of collateral estoppel is favored with regard to determinations of administrative bodies that have reached finality. Properly applied, doctrines of preclusion serve important purposes of repose and efficiency. But when the Legislature has, through statute, expressed an intention to limit the application of doctrines of preclusion, the judiciary must effectuate this intent. We believe that the Legislature, by providing for de novo review under the NMHRA, has expressed its will that NMHRA claims should be adjudicated independent of any prior agency proceeding or determination. *See Timmons v. White*, 314 F.3d 1229, 1234 (10th Cir. 2003) (stating that de novo review means "the court's inquiry is not limited to or constricted by the administrative record" (internal quotation marks and citation omitted)).

{37}    For all the reasons stated above, we hold that findings made by an administrative agency have no collateral estoppel effect on an action filed under the NMHRA, which grants a right to bring a "trial de novo" in the district court.[1]

---

[1] Our holding does not apply to Contreras's retaliatory discharge claim which is not brought pursuant to the NMHRA. This claim is brought pursuant to NMSA 1978, Section 52-1-28.2(A) (1990) (providing that "[a]n employer shall not discharge, threaten to discharge

## III.    CONCLUSION

**{38}**    The order granting summary judgment on Contreras's claims of discrimination  and retaliatory discharge is reversed in part and affirmed in part.  The order granting summary judgment on Perea's claims of discrimination is reversed.

**{39}    IT IS SO ORDERED.**

 

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**


_____

**JAMES J. WECHSLER, Judge**


_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for _Contreras v. Miller Bonded, Inc._,  Nos. 31,605/32,050**

**ADMINISTRATIVE LAW AND PROCEDURE**
Administrative Appeal
Hearings
Judicial Review
Standard of Review

**APPEAL AND ERROR**
Trial de Novo

**CIVIL PROCEDURE**
Collateral Estoppel

**CIVIL RIGHTS**
Employment Discrimination
Human Rights Act
Procedure
Racial Discrimination

_____

or otherwise retaliate in the terms or conditions of employment against a worker who seeks workers' compensation benefits for the sole reason that that employee seeks workers' compensation benefits"), and summary judgment was properly granted on this claim.

Rights of Persons with Disabilities

**EMPLOYMENT LAW**
Termination of Employment

**FEDERAL LAW**
Civil Rights

**STATUTES**
Interpretation
Legislative Intent